United States Court of Appeals,

Fifth Circuit.

No. 94-30267.

Lorraine McGUIRE, wife of/and Jack Valley, Plaintiffs,

v.

SIGMA COATINGS, INC., et al., Defendants.

James Veach, Movant-Appellant.

March 31, 1995.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before POLITZ, Chief Judge, GARWOOD and BENAVIDES, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant James Veach (Veach) appeals an order of the district court sanctioning him for destroying documents responsive to discovery requests. Because we hold that the district court did not acquire personal jurisdiction over Veach, we vacate the order.

**Facts and Proceedings Below**

In June 1991, Fina Oil and Chemical Company (Fina) was sued in the United States District Court for the Eastern District of Louisiana for alleged environmental contamination of a Harvey, Louisiana, site leased to Sigma Coatings, Inc., a division of Fina, for operation of a paint manufacturing facility.[1] Veach, who is in-house counsel specializing in environmental matters for Fina in its Dallas, Texas, office, was not counsel for Fina in connection with this litigation. Fina was represented in the litigation by outside counsel.

In the litigation, which has since been settled, plaintiffs served several document requests on Fina. The first request, served June 3, 1991, with the original complaint, asked Fina to provide, *inter alia,* "[a]ll documents relating or referring to the conducting of any environmental assessment or environmental testing of Sigma Coatings, Inc.'s facility in Harvey, Louisiana, from 1980 through the

---

[1]That case was styled *McGuire et al. v. Sigma Coatings, Inc. et al.* The *McGuire* suit was later consolidated with *Whitney National Bank v. Fina Oil & Chemical Company et al.*

present." Fina responded that it would provide the requested documents to the extent they were not protected by the attorney-client privilege. On October 16, 1991, plaintiffs requested additional documents from Fina, including "[a]ny and all questionnaires draft ed by the defendants in Dallas, delivered to longtime Sigma Coatings, Inc.'s employees ... that request information concerning the environmental practices and/or consequences at the facility at 3300 River Road in Harvey, Louisiana." Fina objected to this request on the basis of the attorney-client privilege and the attorney work product doctrine. On December 10, 1991, Veach, in Dallas, destroyed certain questionnaires issued to various Fina employees as part of Fina's 1991 environmental audit. It is the destruction of these documents that gives rise to the present controversy.

In addition, as part of a notice of deposition served on Fina on January 17, 1992, plaintiffs requested that deponent Richard Charter (Charter), head of Fina's Environmental Affairs Department, provide "[a]ny and all memoranda, notes, letters or reports prepared or received by Rick Charter regarding any and all inspections or audits made by him, or any other representative of Fina Oil and Chemical Company, or their insurers, of the Sigma Coatings facility at 3300 River Rd., Harvey, Louisiana." Veach, who attended the January 21, 1992, oral deposition of Charter, stated that the pre-audit questionnaires were not being produced because they were covered by the attorney-client privilege. This was the first time plaintiffs learned that Fina had conducted environmental audits. At the deposition, Charter was questioned about Fina's document retention policies, and he stated that the company's usual procedure was to destroy all intermediate documentation comprising the audit report after the audit report was issued. The final 1991 audit report was issued in April 1992; as previously noted, however, Veach had destroyed his copies of the pre-audit questionnaires in December 1991, around the time the draft report was issued.

On July 17, 1992, the plaintiffs filed a motion to compel production, specifically requesting the pre-audit questionnaires. The magistrate judge held a hearing on this motion on July 21 and 23. The minute entry that resulted from that conference, filed July 27, 1992, directed Fina to produce for *in camera* inspection its 1989 and 1991 environmental audits and a list of all documents responsive to plaintiffs' document requests over which Fina claimed privilege. Having reviewed the audit reports

Fina provided for *in camera* inspection, the magistrate judge determined that Fina had unnecessarily injected counsel into the audit process in a deliberate attempt to bring the resulting documents under the attorney-client privilege; the magistrate judge therefore ordered the audits produced. The pre-audit questionnaires, however, were not provided, and in its minute entry of August 12, 1992, the magistrate judge ordered the questionnaires produced for *in camera* inspection and cautioned that, if Fina could not locate the questionnaires, it was to provide an affidavit explaining why. In response, Fina submitted the affidavit of Charter, which stated that it was Fina's general policy to destroy the questionnaires after the final audit report was issued, but that Fina's files did not reflect exactly when the documents were destroyed.

On October 6, 1992,[2] plaintiffs filed a motion for default judgment and other appropriate sanctions against Fina; they sought no sanctions against any individual attorney or officer of the company.[3] The magistrate judge held a hearing on this motion on November 5. Veach was the principal witness in that hearing. Under questioning by opposing counsel, Veach testified that he had destroyed the pre-audit questionnaires on December 10, 1991, the date a draft audit was issued. This was the first time that either plaintiffs or the court learned exactly when the questionnaires had been destroyed and who had destroyed them. Asked to explain why he had failed to produce these documents despite plaintiffs' first and second requests for production, Veach testified that there was not nor had there ever been an outstanding request for these documents. With regard to plaintiffs' first request for production, only "environmental assessments" had been requested. In the terminology of the industry, Veach explained, "environmental assessments" and "environmental audits" were two very different things; therefore, he did not consider the audit materials relevant to the discovery request. With regard to plaintiffs' second request for production, which sought

---

[2] The *McGuire* plaintiffs filed their motion on October 6; the *Whitney National Bank* plaintiffs filed a similar motion on October 15. The magistrate judge heard these motions together at the November 5, 1992, hearing.

[3] At the start of that hearing, while discussing the propriety of excluding nonessential persons from the courtroom, the court told the parties, "I do not intend to render sanctions against a specific individual. The motion that is in front of me is a motion for sanctions against Fina, not against any one individual here."

questionnaires regarding environmental practices at the Harvey, Louisiana, facility, Veach testified that Fina had produced a separate set of questionnaires that fit the description in plaintiffs' request, but that the pre-audit questionnaires were not responsive to the request and therefore had not been produced. Veach also testified that he believed the pre-audit questionnaires to be privileged and that it was his understanding of the law that he could destroy documents over which privilege was claimed.[4]

The magistrate judge issued her report and recommendations on August 19, 1993, in which she recommended that Fina be sanctioned in connection with the destruction of the pre-audit documentation, which she found to be directly responsive to plaintiffs' first request for production.[5] In that regard, she noted,

> "But more importantly and completely impossible to condone is the action of Fina's chief in-house counsel for environmental matters, James Veach, who ordered the destruction of documents specifically responsive to discovery requests....
>
> Mr. Veach blatantly testified at the time of the hearing that he had a *right* to destroy these documents without first bringing them to the attention of the court for *in camera* inspection because they were, in his opinion, privileged.
>
> ... Here the precise person who provoked the evidence destruction had direct notice of what was sought and that person was an attorney. A worse example of bad faith is hard to imagine....
>
> ... Corporate in-house counsel for Fina deliberately allowed these documents to be destroyed and the court finds that severe sanctions are appropriate in this case."

As sanctions, the magistrate judge recommended that Fina be required to advance the costs of cleanup of the property (albeit without prejudice to its ability to seek contribution from other culpable parties), that the burden of proof as to liability and apportionment of damages between Fina and other

---

[4]Veach, and Fina, relied on the Supreme Court's decision in *Upjohn v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The *Upjohn* Court held that statements made by corporate employees, at the direction of corporate management, to in-house counsel for the purpose of allowing counsel to give legal advice were protected by the attorney-client privilege. *Id.* at 393, 101 S.Ct. at 685. Thus, questionnaires and notes would be privileged if they met this standard. *See id.* at 395, 101 S.Ct. at 686. We find nothing in *Upjohn,* however, which addresses whether an attorney's claim of privilege over such documents gives him the unilateral right to destroy them without a prior court determination of privilege.

[5]The sanctions order also involved the destruction of other documents by other Fina employees.

potentially responsible parties be switched to Fina, and that Fina pay all plaintiffs' attorneys' fees in connection with the motion for sanctions.

The district court accepted the magistrate judge's recommendations on October 29, 1993, with certain modifications.[6] The district court also imposed additional sanctions against the company[7] and, more importantly for present purposes, dealt with Veach personally. In the latter regard, the district court's order states:

> "Further, this Court finds that James L. Veach flagrantly disregarded the authority of this Court and the rules of discovery. As a result, criminal contempt proceedings will be instituted against Mr. Veach by a forthcoming order of this Court.
>
> The Clerk of Court is ORDERED to notify the Texas State Bar, wherein Mr. Veach is admitted to practice law, of this Court's allegation that Mr. Veach engaged in extremely unethical conduct by destroying evidence that was the subject of a valid discovery request and by displaying a lack of candor to this tribunal. A copy of the Magistrate's Report and Recommendation regarding the Valleys' and Whitney's Motion for Sanctions and/or Default Judgment, as well as a copy of this ruling adopting that report and recommendation with modifications should be attached to the complaint. Upon this Court's issuance of the order to show cause why Mr. Veach should not be found in criminal contempt, the Clerk is ORDERED to supplement its notice to the Texas Bar with a copy of that order."

There was, however, no further order of the district court instituting criminal contempt proceedings against Veach, nor was any show cause order issued as to him.

Pursuant to its October 29 order, the district court referred the matter of Veach's conduct to the Texas State Bar and to the United States Attorney for the Eastern District of Louisiana. While the matter was thus being considered, counsel for Veach[8] wrote to the district court on February 8,

---

[6] Specifically, the district court modified the attorneys' fees sanction by requiring Fina to pay all plaintiffs' attorneys' fees incurred as a result of plaintiffs' efforts to discover the destroyed documents. As to the burden of proof sanction, the district court clarified that Fina would be presumed to be responsible for the contamination of the property, that it would be required to prove by clear and convincing evidence that other parties were also responsible for the contamination, and that Fina was prohibited from introducing evidence or testimony relating to the documents that had been destroyed. In addition, the district court elected to keep under advisement motions to dismiss Fina's claims against plaintiffs and certain third party defendants.

[7] The district court held Fina in civil contempt for failing to comply with the court's discovery order and enjoined it from using in-house counsel "until Fina demonstrates to Magistrate Judge Chasez that the in-house counsel it seeks to utilize is not connected in any way with prior discovery or with the gathering and/or destruction of evidence."

[8] Separate, outside counsel was hired to represent Veach with respect to the disciplinary and criminal contempt proceedings.

1994, to request that the district court retract its referrals and allow Veach a hearing thereon before the magistrate judge. The district court did not respond to this letter. On March 4, 1994, the Texas State Bar Disciplinary Counsel sent a letter to Veach informing him that the Grievance Committee had dismissed the matter after determining that he had not committed professional misconduct. On March 16, Veach's counsel again wrote to the district court, informing the court of the Texas State Bar's decision and asking the court to suspend the criminal contempt investigation to allow Veach a hearing thereon. The court did not respond to this letter either. On March 23, 1994, the United States Attorney for the Eastern District of Louisiana sent a letter to the district court advising that the United States Attorney would not pursue criminal contempt proceedings in this matter.[9] Subsequently, on March 25, 1994, the district court, without prior notice or hearing and without issuance of any process, entered *sua sponte* an order, "pursuant to the inherent power of this Court to control the proceedings before it," imposing a $5000 fine on Veach. The court reasoned "that James L. Veach flagrantly disregarded the authority of this Court and the rules of discovery. Such recalcitrance and willful misconduct is in complete disregard for the sanctity of the judicial process and cannot be condoned if other litigants are to be deterred from engaging in similar activity." Veach then filed a formal motion for hearing on April 22, which the district court denied on April 25, 1994.

---

[9]Under the relevant statute,

> "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
>
> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
>
> (2) Misbehavior of any of its officers in their official transactions;
>
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401.

The United States Attorney found that subpart (1) of the statute was not applicable because the documents had been destroyed in Dallas and that subpart (2) was inapplicable because Veach was neither an attorney in the underlying litigation nor a member of the bar of the Eastern District of Louisiana. With respect to subpart (3), the United States Attorney concluded that there was insufficient evidence to establish beyond a reasonable doubt that a district court order was outstanding when the documents were destroyed.

In the memorandum of reasons respecting the April 25 order, the district court reasoned that the November 5, 1992, hearing before the magistrate judge at which Veach testified satisfied Veach's due process rights because "the focus of that hearing was whether James Veach, as agent for Fina, acted in bad faith." It noted that the arguments and documentation that Veach submitted in support of his motion had already been exhaustively considered in both the November 5, 1992, hearing before the magistrate judge and in the October 28, 1993, hearing on motions to review the magistrate judge's report before the district court, both of which Veach had attended. It therefore found that Veach's arguments did not merit further judicial consideration and denied the motion for hearing.

Veach now appeals and asks this Court to vacate the district court's order. He advances several arguments: (1) that the district court had no jurisdiction to sanction him because he was neither a party nor an attorney of record in the underlying case; (2) that the district court violated his due process rights by sanctioning him without prior notice and an opportunity for a hearing; and (3) that his actions were not sanctionable. Because we decide this case on the jurisdictional issue, we do not consider Veach's remaining arguments.

### Discussion

We review a district court's imposition of sanctions under its inherent powers for abuse of discretion. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 54, 111 S.Ct. 2123, 2138, 115 L.Ed.2d 27 (1991). Of course, " "[a] court must have jurisdiction as a prerequisite to the exercise of discretion.' " *Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 471 (5th Cir.1985) (citation omitted). We have elsewhere noted that "it is unclear whether the inherent power to sanction discovery abuses extends to abuses committed by non-parties." *Natural Gas Pipeline Co. v. Energy Gathering, Inc.,* 2 F.3d 1397, 1411 (5th Cir.1993) (footnote omitted), *cert. denied,* --- U.S. ----, 114 S.Ct. 882, 127 L.Ed.2d 77 (1994). Because we find that the district court did not acquire personal jurisdiction, as a matter of process, over Veach, we need not today decide the further question whether, had the procedural requirements been satisfied, the district court would have had jurisdiction, as a matter of power, to sanction him. *See* 1 Moore's Federal Practice ¶ 0.60[8] at 642-642.1 ("Service of process relates both to the court's power to determine the rights of the

defendant, and to notice to the defendant that his rights are being put in issue, so that he may have the opportunity to appear and defend.") (footnote omitted).

A judgment rendered in the absence of personal jurisdiction is void and must be set aside. *Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind,* 841 F.2d 646, 649 (5th Cir.1988) (per curiam); 2 Moore's Federal Practice ¶ 4.02[3] at 4-90. To acquire jurisdiction over the person, a court must serve on the person a document, "such as a summons, notice, writ, or order." 2 Moore's Federal Practice ¶ 4.02[1] at 4-85. In addition, a person waives the defense of defective service if he voluntarily submits himself to the court's jurisdiction by appearing before it and allowing it to adjudicate his rights. *Id.* ¶ 4.02[3] at 4-91. Such formal notice of contemplated action, or the waiver of notice by voluntary appearance, is part of the due process limitations on federal courts' jurisdiction. 4 Wright & Miller, Federal Practice and Procedure § 1074 at 456.

At the time sanctions were rendered against him, Veach had not been served with any document that would satisfy the requirement of formal process. He was not a party to the case (or the alter ego of a party), nor an attorney in it, nor a member of the district court's bar, and thus was not otherwise subject to the district court's jurisdiction. The district court had not issued a show cause or similar order or process that would have put Veach on notice that sanctions were being considered against him personally. The fact that he was an in-house counsel for the defendant corporation and had participated, to some extent, as a witness in the litigation, or had advised his employer about it, is by itself insufficient to overcome the deficiency in notice. Actual notice of the litigation does not satisfy the requirement of proper service of a summons under Rule 4, *Way v. Mueller Brass Co.,* 840 F.2d 303, 306 (5th Cir.1988), and we think this same rule applies with at least as great force to a proceeding to consider sanctions against a person in Veach's position.

Veach's only actual appearance in the underlying case was as a witness at the November 5, 1992, hearing. In this capacity, he was subject to the court's inherent power to control the litigation before it, such as by a citation for contempt, for his conduct in the court's presence. Indeed, such "direct" contempts may be punished summarily. *Adams v. McIlhany,* 593 F.Supp. 1025, 1028-29 (N.D.Tex.1984), *aff'd,* 764 F.2d 294 (5th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 883, 88

L.Ed.2d 918 (1986). But Veach was sanctioned not for his conduct in or around the courtroom in New Orleans, Louisiana, but for his earlier destruction of documents in Dallas, Texas. Although "constructive" contempts such as this may not necessarily be beyond the court's power to punish,[10] some form of process is required to alert the alleged contemnor of the court's intention to sanction him.[11] 11 Wright & Miller, Federal Practice and Procedure § 2960 at 589 ("But when it is sought to charge a person with contempt who was not a party to the original action and thus not already within the jurisdiction of the court, he must be served with process as in any other civil action.") (footnote omitted); *see Cooke v. United States,* 267 U.S. 517, 536, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925) (reasonable notice is part of minimal due process requirements attendant on prosecution of contempts).[12]

Nor do we think that Veach waived his right to process by voluntarily submitting himself to the court's jurisdiction. The February 8 and March 16, 1994, letters from Veach's attorney to the district court requested a hearing to contest the October 29, 1993, order's referrals to the Texas State Bar and the United States Attorney, not a hearing on sanctions to be imposed by the court itself, as

[10]In the context of criminal contempt, the words "so near thereto as to obstruct the administration of justice" in the statute have been interpreted to require physical, geographical proximity to the court. *Nye v. United States,* 313 U.S. 33, 46-51, 61 S.Ct. 810, 815-16, 85 L.Ed. 1172 (1941). As recounted above, the United States Attorney investigating the charges against Veach found that the destruction of documents in Dallas did not satisfy this physical proximity requirement.

[11]*Cf. Western Water Management, Inc. v. Brown,* 40 F.3d 105, 109 (5th Cir.1994) (finding notice inadequate under Rule 65 when defendants were not notified of court's *sua sponte* proposal to modify the injunction).

[12]See also *Waffenschmidt v. MacKay,* 763 F.2d 711 (5th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 794, 88 L.Ed.2d 771 (1986), in which defendants, who were not parties in the underlying litigation, were found to have violated an injunction by helping a party transfer disputed funds out of the court's jurisdiction. Relying on Rule 65, we held that "[n]onparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order." *Id.* at 714. Even in that case, however, we noted the importance, for jurisdictional purposes, of a show cause order directed specifically to the defendants. *Id.* at 719 (distinguishing *Panther Pumps & Equipment Co. v. Hydrocraft, Inc.,* 566 F.2d 8 (7th Cir.1977), *cert. denied,* 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978), in which the Seventh Circuit held that the district court did not have personal jurisdiction over a nonparty, on the ground that the district court in *Panther Pumps* did not make the nonparty subject to its show cause order). Moreover, in this case, unlike *Waffenschmidt,* there is no assertion that Veach disobeyed or aided others in disobeying any order of the district court.

per its March 25, 1994, order.  Moreover, the district court never responded to these letters and never gave any notice of its intention to itself impose sanctions, nor afforded Veach any hearing.  Nothing was done to bring Veach before the court for the sanctions that were ultimately imposed on March 25, 1994.  Veach's formal motion for a hearing, entered after the district court's March 25, 1994, order imposing sanctions, did not constitute a voluntary appearance either.  It was in essence a motion for reconsideration under Rule 60.  As we noted in *Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind,* "[w]hen ... a district court lacks jurisdiction over the defendant because of lack of service of process, the judgment is void and, under Rule 60(b)(4), the district court *must* set it aside." 841 F.2d at 649 (emphasis in original);  *see also* 11 Wright & Miller § 2862 at 198-200.  Such was the case here.[13]

We express no opinion whether, had Veach been properly brought before the district court, it could have sanctioned him pursuant to its inherent power.[14]  We understand the district court's frustration with the course of discovery in this case, and we certainly do not intend our opinion to be construed as in any way approving of dilatory or abusive discovery tactics.  We hold only that, under the facts of this case, the district court did not have jurisdiction to sanction Veach.

### Conclusion

Accordingly, the March 25, 1994, order of the district court is

VACATED.

---

[13]Nor did the district court otherwise construe or jurisdictionally rely on the February and March letters or Veach's post-March 25 motion.

[14]Indeed, we express no opinion as to whether the district court could have acquired jurisdiction over Veach by any procedure.  Of course, the district court would have had jurisdiction to determine whether it could acquire personal jurisdiction over Veach. *Waffenschmidt,* 763 F.2d at 716.