J^CIACCIO, J.
Plaintiffs appeal a directed verdict dismissing their workers compensation claim with prejudice.
*38 FACTS
Truck driver William Georgetown died when the bed of his dump truck fell and crushed him. There were no witnesses to the accident but Georgetown had just reported to Ronnie Vallery that the bed was not working properly.
The mothers of Georgetown’s three children, Josie Warner, Carolyn Mitchell, and Jocelyn Phillips, filed a disputed claim for Compensation against Terry Vallery Trucking (TVT), Ronnie Vallery Trucking (RVT), and Industrial Fill Materials, Inc. (IFM) and its insurer, Louisiana Workers Compensation Corporation. Plaintiffs alleged that TVT, RVT, and IFM were actually all one company and that Georgetown was killed during the course and scope of his employment with them.
After a hearing, the Office of Workers Compensation (“OWC”) granted a directed verdict holding that: 1) Georgetown was an employee of TVT; 2) plaintiffs failed to prove that Georgetown was an employee of either RVT or IFM; and 3) Georgetown was not within the course and scope of his employment with TVT when the accident occurred. OWC then dismissed plaintiffs’ suit with prejudice.
Plaintiffs now appeal, arguing that the trial court erred: 1) in finding that Georgetown was not acting in the course and scope of his employment when he was killed; and 2) in finding that Georgetown was not employed by RVT and/or IFM at the time of his death.
LAW AND ANALYSIS

Standard of Review

An appellate court’s review of OWC’s factual findings is governed by the manifest error standard.[2] An appellate court may set aside OWC’s factual findings only if it determines that the record does not provide a reasonable factual basis for OWC’s conclusion or if, after reviewing the record in its entirety, it concludes that OWC’s finding was clearly wrong. But reasonable credibility evaluations and | ¡/factual inferences should not be disturbed on review even if the appellate court feels that its own evaluations and inferences are more reasonable. Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong.[3]

Course and Scope of Employment

A personal injury is compensable under the Workers’ Compensation Act only if it results from an accident “arising out of and in the course of employment.”[4] Plaintiffs allege that OWC erred in concluding that Georgetown was not acting within the course and scope of his employment when he died.
To evaluate the “course of employment” requirement, the court must focus on whether the employee sustained an injury while actively engaged in the performance of his duties during working hours, either on the employer’s premises or at a place contemplated by employment activities.[5] This inquiry focuses upon the time and place relationship between the injury and the employment. When considering the “arising out of employment” requirement, the court must inquire into the character or origin of the risk suffered by the employee and determine whether this risk was incidental to the employment. *39 An injury arose out of employment if the risk for that injury was greater for the employee than for a person not engaged in the employment.[6]
In its oral reasons for judgment, OWC stated that a “major point” of influence in its decision was that Georgetown was not being paid at the time of his accident. But plaintiffs contend that Georgetown was being paid. Plaintiffs point to Terry Val-lery’s testimony that Georgetown did not punch a clock but was paid “30 percent of whatever the truck made.” Ronnie Val-lery, owner of RVT and Terry’s father, acknowledged that if an employee’s truck weren’t working, that employee would not make any money during that time.
Plaintiffs allege that Georgetown therefore worked on a “commission” basis.
1¿Ronnie testified that shortly before the accident, Georgetown asked him to look at the dump truck bed because it had not been working well. Ronnie testified that he told Georgetown that Terry would change the hose. When Georgetown asked whether the truck would be ready the next morning, Ronnie told him yes. But according to Ronnie, Georgetown asked again, “you’re sure?”
Plaintiffs maintain in brief that this testimony shows that Georgetown “intended to facilitate or hasten repairs that were in furtherance of his employment duties.” Georgetown’s duties as a dump truck driver involved hauling the truck’s contents to a designated site for delivery. Georgetown knew that if the truck was still broken the next day and he could not dump the contents of the truck’s bed, he would not get paid. The risk of being injured or killed by a malfunctioning dump truck bed is certainly greater for the truck’s operator than for people not engaged in this activity. The OWC was clearly wrong in declaring that the sole function of Georgetown was to drive the truck as he failed to recognize that it was necessary for the driver to dump the contents of the truck at the delivery site. The operation of the dump truck bed was an integral part of Georgetown’s duties.
Georgetown had not been ordered to stay away from the truck or to refrain from checking its operation, an activity in furtherance of his employer’s business. There is no evidence as to what Georgetown was doing before he was killed by the falling dump truck bed. He may have been negligent in volunteering to attempt to either inspect or repair the malfunctioning hose, but negligence is not a bar to recovery under workers’ compensation law.
At the time of the accident, Georgetown had returned to the trucking company lot. Terry testified that he usually told Georgetown at the end of the day about the next day’s assignment. Terry acknowledged that Georgetown might have been waiting for him to return to the lot for further instructions.
Georgetown died on his employer’s premises. Even if Georgetown was not responsible for the truck’s maintenance, if the truck was not working the following day, he could not perform his duties as a dump truck driver and therefore would not Gbe paid. The record shows that: 1) Georgetown was a dump truck driver who was killed when the dump truck bed fell while he was either inspecting or attempting to repair it; and 2) this was the truck that Georgetown drove as part of his employment. After reviewing the testimony, we find that OWC was clearly wrong in finding that Georgetown was not acting within the course and scope of his employ *40 ment as a dump truck driver when this accident occurred. This assignment of error has merit.

Employer Status

Plaintiffs further contend on appeal that OWC erred in failing to recognize the existence of an employment relationship between Georgetown and RVT and IFM. Plaintiffs argue that TVT, Georgetown’s admitted employer, and RVT and IFM actually operated as a single business enterprise, thereby making all Georgetown’s employer for the purposes of workers’ compensation law.
When determining whether a corporation is an alter ego, agent, tool or instrumentality of another corporation, the court must examine the substance of the corporate structure rather than its form.[7] When determining whether a group of entities constitutes a “single business enterprise,” relevant considerations include:
1) identity or substantial identity of ownership (i.e., ownership of enough stock to give actual working control);
2) common directors or officers;
3) unified administrative control of corporations whose business functions are similar or supplementary;
4) whether directors and officers of one corporation act independently in the interest of that corporation;
5) whether one corporation finances the other corporation;
6) inadequate capitalization (“thin incorporation”);
7) whether one corporation caused the incorporation of another affiliated corporation;
8) corporation paying the salaries and other expenses or losses of another corporation;
9) receiving no business other than that given to it by its affiliated corporations;
| filO) corporation using the property of another corporation as its own;
11) noncompliance with corporate formalities;
12) common employees;
13) services rendered by the employees of one corporation on behalf of another corporation;
14) common offices;
(15) centralized accounting;
(16) undocumented transfers of funds between corporations;
(17) unclear allocation of profits and losses between corporations; and
(18) excessive fragmentation of a single enterprise into separate corporations.
These considerations are merely illustrative and are not intended as an exhaustive list of relevant factors. And no one factor is dispositive on the issue of “single business enterprise.”
Whether an affiliated group of entities constitutes a “single business enterprise” is a question of fact to be decided by the trial court.[8] Thus, as an appellate court, in order to reverse OWC’s determination on the issue, we must find that the record shows no reasonable factual basis for OWC’s finding and that the record establishes that the finding is clearly wrong.[9] Considering the above-outlined factors and the scope of our review on appeal, we conclude that OWC was manifestly erroneous when it failed to recognize *41 that TVT, RVT, and IFM were, in fact, a single business enterprise.
Ronnie testified that neither RVT nor TVT was incorporated or registered with the Secretary of State. Ronnie testified that TVT parked its trucks on the lot owned by RVT and shared phone lines and office space in Ronnie Vallery’s home. When asked about whether and how employees were advised about trucking maintenance, Ronnie responded, “we got a swing in the yard and we would gather around and tell them.” We apparently referred to RVT and TVT.
17Ronnie testified that he bought the first truck for TVT and made insurance payments on Terry’s behalf. The liability policy on TVT trucks was even in Ronnie Vallery’s name. Terry paid Ronnie back by having IFM deduct insurance premiums and payments for the truck from IFM’s payments to TVT. These amounts were then transferred to RVT’s payments from IFM. And Terry testified that the truck involved in the accident was registered in his father’s name.
Ronnie testified that IFM dispatched all of his trucks out. Neither RVT nor TVT did business with any corporation other than IFM. Ronnie testified that IFM carried workers’ compensation insurance on all of his trucks. Kathy Sehexnayder, bookkeeper at IFM, testified that she deducted the amounts for these premiums from IFM’s payments to RVT and TVT. Ms. Sehexnayder testified that she performed these accounting services at no charge.
After considering the testimony and the appropriate considerations, we find that the distinction between TVT, RVT, and IFM is minimal. The testimony shows: 1) unified administrative control between three businesses with similar functions (hauling sand and gravel); 2) that Ronnie actually financed TVT; 3) IFM paid workers’ compensation costs for RVT and TVT; 4) RVT paid most costs and expenses of TVT; 5) neither RVT nor TVT received any business other than that given to it by IFM; 6) TVT used RVT’s property as its own; 7) noncompliance with corporate formalities by RVT and TVT; 8) services rendered by an IMF employee (Sehexnay-der) on behalf of RVT and TVT; 9) common offices for RVT and TVT; and 10) centralized accounting. Thus, we find that RVT, TVT, and IFM operated as a single business enterprise for purposes of joint liability in workers’ compensation coverage. This assignment of error has merit.
CONCLUSION
For these reasons, we reverse the OWC judgment dismissing plaintiffs’ claim with prejudice. We hereby enter judgment in favor of plaintiffs and against Ronnie Val-lery Trucking, Terry Vallery Trucking, Industrial Fill Materials, Inc., and Louisiana | sWorker s’ Compensation Corporation. We remand to OWC for a judgment awarding damages. All costs of this appeal are assessed against appellees.
REVERSED; REMANDED.
CARTER, C.J., concurs.

. Godeaux v. Lewis Chapman Const. Co., 2002-0025 (La.App. 1 Cir. 12/31/02), 836 So.2d 670, 676.

. Id.

. LSA-R.S. 23:1031.

. Lewis v. Houma Industries, 2001-0641 (La.App. 1 Cir. 5/10/02), 818 So.2d 956, 958.

. Id.

. Grayson v. R.B. Ammon and Associates, Inc., 99-2597 (La.App. 1 Cir. 11/3/00), 778 So.2d 1, 15.

.Id.

.Id., at 15-16.