**SOUTHERN CAPITOL ENTERPRISES, INC. & F. David Tutt**

v.

**CONSECO SERVICES, L.L.C., et al.**

**Civil Action No. 04–705–JJB.**

United States District Court, M.D. Louisiana.

Feb. 22, 2007.

James Rodney Chastain, Jr., A. Edward Hardin, Jr., G. Trippe Hawthorne, Kean, Miller, Hawthorne, D'Armond, Stephen Layne Lee, Moore, Walters, Thompson, Thomas, Papillion & Cullen, Baton Rouge, LA, for Southern Capitol Enterprises, Inc. & F. David Tutt.

Christine Lipsey, Lauren M. Smith, Scott Nikolaus Hensgens, Breazeale, Sachse & Wilson, Baton Rouge, LA, for Conseco Services LLC and Conseco Health Insurance Company.

## *RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT*

BRADY, District Judge.

The matter before the court is a motion for partial summary judgment on the single business enterprise theory (doc. 155) filed collectively by two of the defendants, Conseco Services, L.L.C. and Conseco

Health Insurance Company ("Conseco Health"). The plaintiffs are Southern Capitol Enterprises, Inc. and F. David Tutt (together as "Plaintiffs"), and they have together filed an opposition (doc. 183). Conseco Services and Conseco Health have together filed a reply brief (doc. 186). The third defendant, Performance Matters Associates ("PMA"), has not filed anything in this matter. The court's subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332.

## Background

In September of 1994, Plaintiffs entered into an executive marketing agreement with Capitol American Life Insurance Company ("Capitol"), and its parents, subsidiaries and affiliates. Plaintiffs were appointed as independent contractors with Capitol to market and sell insurance products. The marketing agreement granted Plaintiffs the exclusive right to solicit insurance applications for Capitol's business and consumer marketing divisions in Louisiana. The products solicited by Plaintiffs and their downline agents during their working relationship with Capitol included cancer, intensive care, heart and stroke, accident/sickness, dental, long-term care, medicare supplement, and some life insurance products. The 1994 marketing agreement was not the first marketing agreement executed between Plaintiffs and Capitol. There was a prior marketing agreement between the parties that was similar in most respects to the 1994 agreement. In all, Plaintiffs solicited and sold insurance applications exclusively for Capitol for over 23 years.

In late 1996, Capitol's parent company was purchased by Conseco, Inc. Conseco, Inc. subsequently changed Capitol's name to Conseco Health in May of 1998. Conseco Health assumed Plaintiff's 1994 executive marketing agreement. In December 1996, Conseco, Inc. purchased an insurance company named American Travellers Corporation—the parent company of American Travellers Life Insurance Company. Conseco, Inc. changed American Travellers' name to Conseco Senior Health Insurance Company ("Conseco Senior") in November of 1998. Thereafter, another insurance company purchased by Conseco, Inc., Transport Life, was put under Conseco Senior, which thereafter marketed Transport Life products such as cancer policies. The evidence, when viewed in a light most favorable to Plaintiffs, shows that during the term of Plaintiffs' marketing agreement with Conseco Health, Conseco Senior sold insurance policies in Louisiana that competed with Conseco Health's policies marketed and sold by Plaintiffs. As previously mentioned, Plaintiffs had exclusive marketing rights to these policies under its terms with Conseco Health.

The evidence and reasonable inferences show that after the purchases by Conseco, Inc. in late 1996, Capitol/Conseco Health and American Travellers/Conseco Senior stopped having their own employees. Instead, their former employees became employed by Conseco Services. Thereafter, Conseco Services' employees handled the payment of commissions, and they also purported to resolve any problems with commissions for both Conseco Health and Conseco Senior. Conseco Services' employees billed insurance customers for their premiums, using Conseco Services' computers, and then applied those premiums for both Conseco Health and Conseco Senior. Moreover, the president of the Conseco Insurance Group (which included Conseco Health and Conseco Senior) was an employee of Conseco Services.

Plaintiffs complained that Conseco Senior was competing with them vis a vis the solicitation and selling of insurance products to which they claimed they had the exclusive right to sell under their marketing agreement with Conseco Health. In-

stead of Conseco Health or Conseco Senior undertaking an investigation of Plaintiffs' complaints, the investigation was performed by using Conseco Services' computers and employees.

On March 29, 2001, Ron Bendes, a Conseco Services' employee, delivered a letter to Plaintiffs on Conseco Services' letterhead in an attempt to address Plaintiffs' complaints.[1] Bendes attempted to have Plaintiffs agree to a reduction in the exclusivity rights covered by their marketing agreement with Conseco Health. This was done in order to accommodate Conseco Senior's sales of the allegedly competing insurance policies. Also in that letter, Bendes stated that he proposed certain changes to "our" relationship. Plaintiffs refused to accept Bendes' offer.

On June 3, 2003, Bendes delivered a letter, once again on Conseco Services' letterhead, informing Plaintiffs that the marketing agreement with Conseco Health was being terminated. The letter opens by saying,

> This is to inform you that under the terms of your 1994 Executive Marketing Agreement ("Agreement") with Conseco Health Insurance Company (formerly known as Capitol American Life Insurance Company) (hereinafter "Company"), we are exercising the right to terminate your Agreement without cause with 120 day notice to you. We hereby provide you with formal notice that we will terminate your Agreement on October 1, 2003.[2]

A reasonable inference from Bendes' June 2003 letter is that Conseco Services was terminating a marketing agreement executed between Conseco Health and Plaintiffs. In fact, Bendes testified at his deposition that he was an employee of Conseco Services and not of Conseco Health. He testified that no employee of Conseco Health terminated Plaintiffs' marketing agreement. Bendes was unable to name the president of Conseco Health, and he also testified that he did not know any direct employees of Conseco Health. Bendes was equally unaware of the president or direct employees of Conseco Senior. Bendes further testified that Conseco Insurance Group was a name used internally to mean "the overall entity, you know, Carmel [, Indiana] based operations." Conseco Health, Conseco Services, and Conseco Senior are located on the same premises in Carmel, Indiana.

Following the termination of Plaintiffs' marketing agreement, Plaintiffs filed a petition for declaratory judgment and injunctive relief against Conseco Services in the 19th Judicial District Court for the Parish of East Baton Rouge. The case was removed to this court on January 23, 2004. Plaintiffs subsequently filed their complaint for breach of contract and damages against Conseco Services and Conseco Health in this court on September 30, 2004. The two actions were consolidated on October 20, 2004. Thereafter, Plaintiffs filed an amended and restated complaint for damages on March 15, 2006—adding PMA as a defendant. The two actions were severed on January 10, 2007. The pending motion for summary judgment concerns action 04–705.[3]

### Standard of Review

Summary judgment is proper when the moving party demonstrates a lack of a genuine issue of material fact and the party is entitled to judgment as a matter of

---

1. Plaintiffs' Exhibit E. The letter states under Bendes' name: "Senior Vice President," "Director of Sales," and "Conseco Services, L.L.C."

2. Plaintiffs' Exhibit F.

3. The only issue remaining in the previously consolidated action 04–40 concerns the validity of the Business Continuation Plan.

law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Melton v. Teachers Ins. & Annuity Ass'n of Am.,* 114 F.3d 557, 559 (5th Cir.1997). The moving party has the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes shows an absence of a genuine issue of material fact. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548.

After the moving party has met its initial burden, the non-moving party is required to set forth facts, by affidavits or otherwise, showing that a genuine issue of material fact exists. *Topalian v. Ehrman,* 954 F.2d 1125, 1132 (5th Cir.1992). In determining whether summary judgment is proper, the court views the evidence, and all reasonable inferences drawn therefrom, in a light most favorable to the non-moving party. *Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 358 (5th Cir.1988).

### Discussion

This case is a diversity case, and therefore the court is bound by the principles under *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). As part of the Erie doctrine, the court is required to make an *"Erie*-quess" as to how the Louisiana Supreme Court would decide the present motion. *See Verdine v. Ensco Offshore Co.,* 255 F.3d 246, 252 *Centennial Ins. Co. v. Ryder Truck Rental, Inc.,* 149 F.3d 378, 382 (5th Cir.1998).

The court must answer three questions in order to resolve the pending motion. First, is the single business enterprise theory ("SBE" theory) a viable legal theory under Louisiana law? The Louisiana Supreme Court has not yet answered this question. If the court's *"Erie*-quess" to this question is "NO," then the inquiry ends and summary judgment is warranted. If the SBE theory is a viable theory, then the court must answer the second ques-

tion, namely is there sufficient evidence in the record showing that the structures of Conseco Health, Conseco Services, and Conseco Senior constituted a single business enterprise? Finally, if the second answer is "YES," then the court must finally ask: against which entities does the SBE theory apply?

### A. The SBE Theory is a Viable Legal Theory Under Louisiana Law

█ As noted above, the defendants point out that the Louisiana Supreme Court has not yet adopted the SBE theory. They argue that there is no persuasive data that the Louisiana high-court would adopt the SBE theory in the future. *Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.,* 953 F.2d 985, 988 (5th Cir.1992). They cite to one federal case in which the Eastern District of Louisiana stated, "[t]here is simply no persuasive evidence to support the argument that the Louisiana Supreme Court would adopt ... the ... single business enterprise theory." *Morales v. Bayou Concessions Salvage, Inc.,* 2004 WL 2381525 (E.D.La. Oct.22, 2004).

The court has reviewed the cases cited by Plaintiffs and agrees with Plaintiffs that all five circuits of the Louisiana appellate court have adopted the SBE theory. *Mangano Consultants, Inc. v. Bob Dean Enters. Inc.,* 921 So.2d 1081 (La.Ct.App. 5th Cir.2006), *writ denied,* 927 So.2d 295, 2006 WL 1307952; *Dishon v. Ponthie,* 918 So.2d 1132 (La.Ct.App.3d Cir.2005), *writ denied,* 927 So.2d 317, 2006 WL 1308842; *Miller v. Entergy Servs., Inc.,* 913 So.2d 143 (La.Ct.App. 4th Cir.2005); *Town of Haynesville, Inc. v. Entergy Corp.,* 840 So.2d 597 (La.Ct.App.2d Cir.2003), *writ denied,* 845 So.2d 1090; *Green v. Champion Ins. Co.,* 577 So.2d 249 (La.Ct.App. 1st Cir.1991), *writ denied,* 580 So.2d 668. Both the eastern and western federal dis-

trict courts in Louisiana have addressed and/or applied the SBE theory. *Freeman Decorating Co. v. Encuentro Las Americas Trade Corp.*, 2005 WL 2060997 (E.D.La. Aug.24, 2005); *Iron Workers Local 58 v. Citizens Bank*, 2002 WL 31427329 (E.D.La. Oct.25, 2002); *Hesni v. Williams & Boshea, L.L.C.*, 2002 WL 373273 (E.D.La. Mar.7, 2002); *Videocipher v. Satellite Earth Stations SESE, Inc.*, 1992 WL 208037 (W.D.La. Jul. 30, 1992). Moreover, the Fifth Circuit has also applied the SBE theory under Louisiana law. *Rive v. Briggs of Cancun, Inc.*, 2003 WL 22838542 (5th Cir.2003) (applying Louisiana law).

After considering the amount of authority in support of the SBE theory being viable in Louisiana, the court is constrained to not follow the reasoning of *Morales*. The *Morales* opinion fails to mention that every Louisiana circuit court of appeal and the federal courts applying Louisiana law have adopted the SBE theory. Moreover, the Louisiana Supreme Court has denied writs in the SBE theory cases decided by the state courts of appeal. The Fifth Circuit has instructed that this court is to only disregard state appellate decisions when there is no persuasive data that the state's highest court would adopt their reasoning. *Transcontinental Gas Pipe Line Corp.*, 953 F.2d at 988. There is persuasive data. Accordingly, this court holds that the SBE theory is a viable legal theory under Louisiana law.[4]

## B. The Structures of Conseco Services, Conseco Health, and Conseco Senior Were Such that They Constituted a "Single Business Enterprise"

■ In Louisiana, corporations are generally recognized as distinct legal entities. *Riggins v. Dixie Shoring Co., Inc.*,

590 So.2d 1164, 1167. However, the legal fiction of a distinct corporate entity may be disregarded when a corporation is so organized and controlled as to make it merely an instrumentality of another corporation. *Green.* 577 So.2d at 257. When corporations have the same interest at stake, courts are free to disregard their separate corporate identity. *Id; see Brown v. Benton Creosoting Co.*, 147 So.2d 89, 94 (La. Ct.App.1962) (*citing* 13 Am.Jur., Corporations, § 7; 1 Fletcher Cyclopedia Corporations, § 41 (1931)). Courts are unwilling to allow affiliated corporations that are not directly involved to escape liability because of business fragmentation. *Green*, 577 So.2d at 257. "Upon finding that a group of affiliated corporations constitute a 'single business enterprise,' the court may disregard the concept of corporate separateness and extend liability to each of the affiliated corporations to prevent fraud or to achieve equity." *Brown v. Auto. Casualty Ins. Co.*, 644 So.2d 723, 727 (La.Ct. App.1995). Ultimately, determining whether an affiliated group of entities constitutes a single business enterprise is a question of fact for the trial court to decide. *Town of Haynesville*, 840 So.2d at 606; *Mitchell v. Indust. Fill Materials, Inc.*, 859 So.2d 36, 40 (La.Ct.App.2003); *Green*, 577 So.2d at 257 (*citing Talen's Landing, Inc. v. M/V Venture, II*, 656 F.2d 1157, 1160 (5th Cir.1981)).

In *Green*, the court set forth a nonexclusive eighteen-factor test to determine whether a group of affiliated entities constituted a single business enterprise. Those factors as set forth by the court are as follows:

1. corporations with identity or substantial identity of ownership, that is,

---

4. Plaintiffs have cited additional cases by the Louisiana courts of appeal and federal courts sitting in Louisiana that have applied the SBE theory. The court need not cite every case addressed by Plaintiffs; it agrees with Plaintiffs that the SBE theory exists under Louisiana law.

ownership of sufficient stock to give actual working control;

2. common directors or officers;

3. unified administrative control of corporations whose business functions are similar or supplementary;

4. directors and officers of one corporation act independently in the interest of that corporation;

5. corporation financing another corporation;

6. inadequate capitalization ("thin corporation");

7. corporation causing the incorporation of another affiliated corporation;

8. corporation paying the salaries and other expenses or losses of another corporation;

9. receiving no business other than that given to it by its affiliated corporations;

10. corporation using the property of another corporation as its own;

11. noncompliance with corporate formalities;

12. common employees;

13. services rendered by the employees of one corporation on behalf of another corporation;

14. common offices;

15. centralized accounting;

16. undocumented transfers of funds between corporations;

17. unclear allocation of profits and losses between corporations; and

18. excessive fragmentation of a single enterprise into separate corporations.

*Green*, 577 So.2d at 257–58. These factors do not constitute an exhaustive list. *Id.* at 258. Moreover, no one factor is dispositive on the issue of whether a single business enterprise exists. *id.*

After considering the above factors, and noting that the evidence and all reasonable inferences drawn therefrom must be viewed in a light most favorable to Plaintiffs, the court concludes that there is a factual dispute as to whether Conseco Senior, Conseco Health, and Conseco Services *constituted a "single business enterprise."*

The evidence shows that Conseco Services, Conseco Health, and Conseco Senior are all owned by, and under the control of, Conseco, Inc. Conseco Inc.'s 10–K report lumps all three entities under the umbrella of "Conseco Insurance Group." [5] Conseco, Inc. lumps all of its insurance subsidiaries in its formal filings as "Conseco," "the Company," "we," and "us."

The director and officer lists for Conseco Health and Conseco Services almost completely overlap. Many of the officers and directors of Consecor Health and Conseco Senior are also officers and directors of Conseco Services. Moreover, the evidence shows that administrative control of Conseco Health and Conseco Senior is unified under Conseco Services, and that these entities have a similar business function, *i.e.,* the sale of insurance. Management contracts give Conseco Services administrative control over all aspects of Conseco Health's and Conseco Senior's operations.

Moreover, when Plaintiffs' marketing agreement with Conseco Health was terminated, it was Bendes that negotiated the terms of the termination. Bendes was an employee of Conseco Services. His letter to Plaintiffs was on Conseco Services' letterhead. Although the marketing agreement was purportedly between Plaintiffs and Conseco Health, the letter of termination stated, *"we* are exercising the right to terminate your Agreement. . . ." [6] There

---

5. Plaintiffs' Exhibit J.

6. Plaintiffs' Exhibit F (emphasis added).

is an inference that it was Conseco Services that terminated Plaintiffs' marketing agreement.

Bendes' March 20, 2001 letter to Plaintiffs, in which Bendes, again on Conseco Services' letterhead, attempted to negotiate a reduction in the exclusivity rights contained in the marketing agreement used the word "we." There is a strong inference that Conseco Services was attempting to negotiate a deal with Plaintiffs vis a vis the marketing agreement entered into between Plaintiffs and Conseco Health. Moreover, Bendes was attempting to reduce Plaintiffs' marketing rights in order to accommodate Conseco Senior's sales of competing policies in Louisiana. It was Conseco Services that made the decision to allow Conseco Senior to sell products in Louisiana that competed with products that Plaintiffs had an exclusive right to sell.

Bendes referred to the affiliated Conseco entities as the "overall Conseco umbrella." In addition, the evidence supports a finding that Conseco Services only worked for its sister companies, Conseco Health, Conseco Senior, and PMA. Conseco Services does not receive any other business except that obtained through the affiliated Conseco entities.[7] Conseco Health and Conseco Senior also use Conseco Services' computers, office equipment, office space, and supplies in conducting their businesses. Moreover, there is almost no distinction between the employees of Conseco Health and Conseco Senior; they all work for Conseco Services.

Conseco Senior, Conseco Health, and Conseco Services are all located on a common campus in Carmel, Indiana. All of the office space used for Conseco Health's and Conseco Senior's businesses are controlled, and owned, by Conseco Services. Although the relevant entities keep separate books, all accounting services, accounting hardware, and accounting software for Conseco Health and Conseco Senior are provided by Conseco Services.

The defendants argue that even if there is a showing that a single business enterprise exists, the SBE theory should not apply because it is an equitable doctrine that only applies in cases in which the corporation directly liable for the wrongful conduct is insolvent. The defendants contend that none of the Conseco corporations are insolvent, and therefore the SBE theory has no place in this case.

 There is no doubt that the SBE theory concerns equity. *See Hopkins v. Howard,* 930 So.2d 999, 1008 (La.Ct.App. 2006). However, Louisiana law does not require the corporation to be insolvent before the SBE theory becomes applicable. A similar argument was made in *Miller.* The *Miller* court, however, applied the SBE theory and found there to be a fact dispute as to whether a single business enterprise existed. *Miller,* 913 So.2d at 148, 150.

In the case *sub judice,* Plaintiffs have alleged that the various Conseco corporations are nothing more than one unified entity. They allege that they had a marketing agreement with Conseco Health, and that this marketing agreement was violated when Conseco Senior sold competing insurance products in Louisiana. There is sufficient evidence in the record to support these allegations. While Conseco Health and Conseco Services maintain that Conseco Senior was a distinct and separate corporation, and therefore was free to compete against Plaintiffs, the record also supports a finding that Conseco Senior and Conseco Health were one-and-the-same. If indeed Conseco Senior and Conseco Health were part of a single busi-

---

7. Plaintiffs' Exhibit J.

ness enterprise, then not applying the SBE theory would give the "Conseco umbrella" an unfair advantage—that is to reap benefits from a bargained-for exchange with Plaintiffs, and at the same time violate the terms of the bargained-for exchange without suffering penalties, all under the guise that a "separate" corporation was acting. That is not fair, and accordingly, there is an equitable reason to apply the SBE theory.

## C. The SBE Theory Only Applies Against Conseco Services and Conseco Health

### 1. The SBE Theory Does Not Apply Against PMA

■ Conseco Services and Conseco Health point out that Plaintiffs did not plead that the third defendant, PMA, was a party to the alleged single business enterprise, Plaintiffs named PMA as a defendant in their amended and restated complaint for damages (doc. 134). In paragraph 28 of the restated complaint, Plaintiffs alleged that Conseco Services, Conseco Health, and Conseco Senior constituted a single corporate identity under the SBE theory. In paragraph 29, Plaintiffs alleged that those three corporations operated and continue to operate as a single business enterprise. Notably, however, Plaintiffs did not allege that PMA was a part of the single business enterprise.

Moreover, paragraphs 42–47 of the restated complaint concern "Facts Regarding The Liability Of PMA." None of those paragraphs allege that PMA was so closely affiliated with the Conseco defendants that it should be included as part of the single business enterprise.

FED.R.CIV.P. 8(a) envisions "fair notice" pleading. The plaintiff must include "a short and plain statement of the claim showing that [he or she] is entitled to relief." FED.R.CIV.P. 8(a)(2). The court holds that Plaintiffs' restated complaint fails to provide fair notice to the defendants that PMA was part of a single business enterprise. The court will not permit Plaintiffs to pursue the SBE theory against PMA, nor will it permit Plaintiffs to pursue a theory that includes PMA as part of the SBE theory against the Conseco defendants.

### 2. No Liability Can Attach Against Conseco Senior

■ The court has already concluded that there are sufficient facts for a reasonable jury to find that Conseco Senior was part of a single business enterprise. The SBE theory extends liability to all of the affiliated corporations based upon the liability of any of the affiliated corporations. *Auto. Casualty Ins. Co.*, 644 So.2d at 727. However, in the case at bar, Plaintiffs have not made Conseco Senior a defendant. There is no evidence in the record that Conseco Senior was ever served with process, accepted or waived service of process, or made any appearances in court. *See Earle v. McVeigh*, 91 U.S. 503, 507, 1 Otto 503, 23 L.Ed. 398 (1875); *McGuire v. Sigma Coatings, Inc.*, 48 F.3d 902, 907 (5th Cir.1995) ("Actual notice of the litigation does not satisfy the requirement of proper service of a summons under Rule 4.").

Even if there is ultimately a finding that Conseco Senior was nothing more than part of an overall single business enterprise, it is still entitled to have an opportunity to appear, be heard, and defend. Conseco Senior may not even share similar interests with Conseco Services and Conseco Health in this dispute. In some circumstances, it may be that one party to a single business enterprise could have an interest not only in ignoring the defense of the other allegedly jointly liable parties, but also in affirmatively seeking to have the other parties held liable. In such situ-

ations, the appearance of the named party-defendants would certainly not suffice for the defense of the unnamed party. Moreover, even if similar interests are involved between Conseco Senior and the Conseco defendants, Conseco Senior must—as a matter of due process—be afforded an opportunity to evaluate the claims made by Plaintiffs and decide for itself how to defend. Parties with seemingly identical interests could still have significant differences in how to protect those interests and how to litigate disputes.

Thus, the court holds that the appearance of one party alleged to be part of a single business enterprise cannot substitute for the appearance and defense of another alleged member of that same enterprise. Accordingly, no liability may attach against Conseco Senior because it is not a defendant in this action.

### 3. The Potentially Wrongful Conduct of Conseco Senior Can Serve as a Basis to Attach Liability Against Conseco Health and Conseco Services

 Finally, the court considers whether the fact that Conseco Senior is not a defendant to this action precludes a finding of liability, based upon its potentially wrongful conduct, against Conseco Services and Conseco Health. After conducting thorough research, the court finds that Louisiana law is silent on the issue of whether all parties to an alleged single business enterprise must be parties to the suit. The Conseco defendants maintain that because Conseco Senior is not a party to the suit, liability based on its wrongful conduct cannot be imputed vicariously. Plaintiffs fail to address this issue in their opposition.

The Conseco defendants direct the court's attention to a Texas state court case, *SSP Partners v. Gladstrong Inv. (USA) Corp.*, 169 S.W.3d 27 (Tex.App.

2005). Texas is one of the few states, like Louisiana, that has adopted the SBE theory. In *SSP Partners*, the court stated,

Even if the single business enterprise doctrine does not require that Gladstrong Hong Kong be a party to the suit, we decline to further extend the doctrine as currently understood, by analogy or otherwise, to the circumstances of this case where Metro and SSP seek to hold a named defendant vicariously liable for the potentially wrongful acts or conduct of a non-party.

*SSP Partners*, 169 S.W.3d at 44.

The court has examined *SSP Partners* and does not find it persuasive. The Texas court gave no substantive explanation as to why named defendants cannot be held vicariously liable for the potentially wrongful acts of a non-party under the SBE theory. It arrived at its holding by first distinguishing the cases cited by the plaintiffs in that case, and then by simply deciding not to "extend" the SBE theory.

This court, on the other hand, does not see recovery based on the wrongful acts of a non-party that is part of a single business enterprise as an "extension" of the SBE theory. What is critical to keep in mind is that the fact that Conseco Senior is a non-party only affects Conseco Senior—namely that no judgment shall be entered against it. Entering a judgment against Conseco Senior would be repugnant to our notion of due process. The same, however, cannot be said for Conseco Health and Conseco Services. They have ample opportunity to prove that liability should not be imputed against them for the potentially wrongful acts of Conseco Senior.

 Moreover, a fundamental principle supporting the SBE theory is that a corporation that is not directly involved in the dispute should not be permitted to escape liability simply because of business fragmentation. *Green*, 577 So.2d at 257. In

600

the case at bar, Conseco Senior sold insurance policies that competed with the insurance polices Plaintiffs sold pursuant to their "exclusive rights"—marketing agreement with Conseco Health. Plaintiffs maintain that Conseco Health and Conseco Senior are one-and-the-same. Thus if the court followed *SSP Partners*, then Conseco Health would escape liability because Conseco Senior's conduct could not be used against it, even though Conseco Health and Conseco Senior may constitute the same business enterprise. It is unfair for a corporation to fragment itself in the manner Plaintiffs allege in order to avoid liability. The court, of course, arrives at no conclusion as to the factual disputes in this case; that is for the jury. It only holds that if a single business enterprise exists, then the potentially wrongful conduct of Conseco Senior can serve as a basis to attach liability against Conseco Health and Conseco Services.

### Conclusion

Accordingly, the motion for summary judgment on the SBE theory (doc. 155) is hereby DENIED. At trial, the SBE theory shall be consistent with this ruling. It is so ORDERED.