**SSP PARTNERS and Metro Novelties, Inc., Appellants,**

v.

**GLADSTRONG INVESTMENTS (USA) CORPORATION, Appellee.**

No. 13–02–671–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

April 7, 2005.

Opinion Overruling Rehearing July 21, 2005.

---

Rick Rogers, Jennifer R. Henderson, John J. Janssen, Porter Rogers Dahlman & Gordon, Corpus Christi, Roger W. Hughes, Scott T. Clark, Adams & Graham, L.L.P., Harlingen, for appellants.

Carla M. Saenz, Carla Saenz & Associates, Brownsville, Thomas C. Wright, Julia L. Kurtz, The Wright Law Firm, Houston, Jose E. Garcia, Garcia & Villarreal, McAllen, for appellee.

Before Justices HINOJOSA, YAÑEZ, and CASTILLO.

## OPINION

Opinion by Justice CASTILLO.

This is an indemnity case. The trial court granted appellee Gladstrong Investments' no-evidence summary-judgment motions against appellants SSP Partners and Metro Novelties. Asserting numerous issues, SSP and Metro appeal the judgments. SSP also appeals an award of guardian ad litem fees. We reverse and remand.

### I. History of the Case

On January 9, 2001, a fire caused by an allegedly defective lighter killed Joshua Castillo. Joshua's two brothers, Matthew

and Christopher, were also injured in the fire. The children's parents, Oscar and Arissa Castillo, claimed that Oscar's sister, Sally, bought the offending lighter at a Circle K store. Oscar and Arissa Castillo brought a products liability action against SSP Partners, Inc.[1] and Gladstrong Investments (USA) Corporation ("Gladstrong USA").[2] SSP then sued Metro Novelties, as supplier of the lighters, for indemnity. Additionally, SSP and Metro both sued Gladstrong USA for indemnity.

Gladstrong USA filed no-evidence motions for summary judgment against SSP and Metro on their indemnity claims, alleging there was no evidence that it was the manufacturer or supplier of the cigarette lighter.[3] The trial court granted Gladstrong's no-evidence motions for summary judgment against both SSP and Metro.

SSP and Metro also sued Tianjin Sico Lighters, Co., Ltd. ("Tianjin"), the alleged manufacturer of a component of the lighter. SSP and Metro also sought but failed to secure leave of court to sue the parent company of Gladstrong USA, Gladstrong Investments, Ltd. ("Gladstrong Hong Kong").[4] Claims against Tianjin were severed.

On October 24, 2002, Gladstrong USA settled with the Castillos. On the same date, the trial court granted the no-evidence summary-judgment motions. On October 28, 2002, the Castillos, SSP, and Metro proceeded to trial. The jury returned a verdict favorable to the Castillos. The trial court judgment memorialized: (1) the no-evidence summary judgments; and (2) the jury verdict. SSP, on appeal, seeks reversal of the summary judgment adverse to it and remand of its indemnity claim for trial on the merits. SSP presents the following issues for review:

(1) Whether the trial court erred in granting a no-evidence summary-judgment motion denying: (a) statutory indemnity to SSP on its claim that Gladstrong USA was either the manufacturer or the supplier of the lighter; and (b) common law indemnity.

(2) Whether the guardian ad litem fees were reasonable.

On appeal, Metro seeks reversal of the summary judgment adverse to it, and presents the following issues for review:

(1) Whether the trial court erred in granting a no-evidence summary-judgment motion that Metro take nothing on its indemnity claims against Gladstrong USA;

(2) Whether, under traditional summary-judgment motion standards, Gladstrong USA's evidence proved Gladstrong USA was neither a manufacturer nor a supplier of the lighter;

(3) Whether Metro's proof showed that it was entitled to indemnity under Texas Civil Practice & Remedies Code

1. The Castillos sued individually and on behalf of the estate of Joshua Castillo, deceased, and as next friends of Christopher and Matthew Castillo. They originally brought suit naming Circle K Stores, Inc. and Circle K Enterprises, Inc., who initially appeared in the suit. In its second amended answer and its third party petition against Metro, SSP subsequently identified itself as the proper defendant, asserting that it had been improperly named as Circle K. Stores, Inc. and Circle K. Enterprises, Inc.

2. Plaintiff alleged that Gladstrong USA manufactured the cigarette lighter.

3. Gladstrong USA urged there was no evidence that it was a manufacturer (as required forstatutory indemnity) and no evidence that it was a supplier in the marketing chain (as required under common law indemnity).

4. The record reflects no formal order either granting or denying the parties' motion to add this entity as a defendant.

**32**

§ 82.002 against Gladstrong USA because Gladstrong USA is: (a) a "manufacturer" under § 81.001(4); (b) jointly liable with Gladstrong Hong Kong under the "single business enterprise" theory of liability; and (c) deemed to be a manufacturer under 15 U.S.C. § 2052(a)(4);

(4) Whether Metro's proof showed it was entitled to common law indemnity because Gladstrong USA was a supplier, a manufacturer, or an apparent manufacturer; and

(5) Whether Gladstrong USA waived objections to Metro's summary-judgment evidence.

## II. The Summary Judgments

On October 24, 2002, the same day SSP filed its response to Gladstrong USA's no-evidence summary-judgment motion, Gladstrong USA filed a reply objecting to SSP's evidence.[5] After a hearing on the same date, the trial court granted Gladstrong USA's motion. On October 28, 2002, Gladstrong USA filed a virtually identical no-evidence motion for summary judgment as to Metro. Metro filed its response, which was virtually identical to SSP's response and included the same evidence, on December 12, 2002. Gladstrong USA replied to Metro's response on February 6, 2003. That reply mirrored the arguments raised in opposition to SSP's claim for indemnity. To the reply, Gladstrong USA attached deposition excerpts. On February 12, 2003, Gladstrong USA filed objections to Metro's evidence which echoed the objections made to SSP's evidence. The trial court held the hearing on the motion for summary judgment on February 13, 2003 and granted the motion.

Both the summary judgments against SSP and against Metro were memorialized in the court's final judgment dated February 13, 2003.

In each motion, Gladstrong USA asserted that there was no evidence as a matter of law that Gladstrong USA was a manufacturer or supplier of the lighter: (1) to Metro, or (2) in the marketing chain. To its motion against SSP, Gladstrong USA attached a copy of SSP's live amended answer, including its cross-claim, and SSP's third-party petition against Tianjin.[6] To its motion against Metro, Gladstrong USA attached a copy of Metro's live cross-claims against Gladstrong USA and Metro's live cross-claim against third-party defendant Tianjin.

█ The fact the answers and petitions were attached to the no-evidence motions for summary judgment is of no consequence. Pleadings do not constitute summary judgment proof. *Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979) (citing *Hidalgo v. Sur. Sav. & Loan Ass'n.*, 462 S.W.2d 540, 543 (Tex. 1971)). In addition, the Texas Supreme Court has stated that it disapproves of decisions that hold or imply that, if a party attaches evidence to a motion for summary judgment, any request for summary judgment under Rule 166a(i) will be disregarded. *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 n. 11 (Tex.2004).

Each motion specifically pointed to Texas Rule of Civil Procedure 166a(i) for its basis. TEX.R. CIV. P. 166a(i). Each motion states "there is no evidence as a matter of law that Defendant Gladstrong was the manufacturer of the cigarette lighter made the basis of this lawsuit, nor is there evi-

---

**5.** By a Rule 11 agreement, the parties agreed to shorten the time for notice of hearing and for filing the response.

**6.** All these pleadings are similarly directed to or include the names Circle K Stores, Inc., and Circle K Enterprises, Inc. instead of SSP.

dence that Gladstrong was a supplier of the lighter in question to Circle K."

We conclude that the two referenced summary-judgment motions constituted no-evidence motions and not traditional motions for summary judgment.

### A. No–Evidence Summary–Judgment Standard of Review

The standard of review for the grant of a motion for summary judgment is determined by whether the motion was brought on no-evidence or traditional grounds. *See* Tex.R. Civ. P. 166a(i), (c); *see also Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 771 (Tex.App.-Corpus Christi 2003, no pet.) (op. on reh'g). A no-evidence motion for summary judgment asserts there is no evidence of one or more essential elements of claims upon which the opposing party would have the burden of proof at trial. Tex.R. Civ. P. 166a(i). A no-evidence motion for summary judgment is properly granted only if the non-movant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to the challenged element of the claims. *See id.; Mulvey v. Mobil Producing Tex. & N.M. Inc.*, 147 S.W.3d 594, 605 (Tex.App.-Corpus Christi, 2004, no pet.) (citing *AMS Constr. Co. v. Warm Springs Rehab. Found.*, 94 S.W.3d 152, 159 (Tex.App.-Corpus Christi 2002, no pet.)).

### B. Summary–Judgment Evidence

SSP attached evidence to its response to Gladstrong USA's no-evidence motion for summary judgment. The evidence included: (1) deposition excerpts of Arissa, Sally, and Oscar Castillo;(2) deposition excerpts

of Teresa Truscelli of the Uniform Code Council (UCC) with attached application of and correspondence with Gladstrong Hong Kong; (3) deposition excerpts of Welsley Li, principal representative of Gladstrong USA, with attached safety recall notice and information from Gladstrong Hong Kong's internet home page; (4) the affidavit of Ben Zhu, counsel for Tianjin, with attached business records of Tianjin; (5) deposition excerpts of Kin Chung Li, President of Gladstrong Hong Kong and Gladstrong USA with accompanying business records of Gladstrong USA; and (6) photographs of the lighter. Metro attached the same evidence to its summary-judgment response.

### C. Waiver

In its fifth issue, Metro asserts that Gladstrong USA waived its objections to Metro's summary-judgment evidence because: (1) it failed to obtain a ruling and failed to object to the absence of a ruling; (2) any implicit ruling must be deemed to have overruled Gladstrong USA's objection; (3) the objections were untimely; and (4) Metro's summary-judgment evidence included five named exhibits, properly authenticated as business records of the Uniform Code Council, containing applications which reflected Gladstrong Hong Kong's admission that it manufactured the lighter in question.

Gladstrong USA objected to exhibits E–1 through E–4, stating those documents were not properly authenticated and constituted hearsay.[7] These exhibits were attached to the affidavit of Teresa Truscelli of the UCC.[8] Exhibit E–1 is titled "Application for Universal Product Code and

---

7. We note again that Metro and SSP each tendered the same evidence.

8. The evidence reflects that, in order for a company manufacturing a product in a for-

eign country to import that product to the United States, it must obtain a unique product code from the UCC.

Uniform Code Council, Inc. Membership." Exhibit E–2 is a letter from the UCC to Gladstrong Hong Kong regarding UPC manufacturer identification numbers. E–3 is a letter from Gladstrong Hong Kong to the UCC Council inquiring as to change of UPC number. E–4 is a series of communications between Gladstrong Hong Kong and the UCC Council regarding inquiries about numbers for an expanded line of lighters.

Gladstrong USA objected to exhibit F–2 as not being properly authenticated and constituting hearsay evidence. Exhibit F–2 is a copy of information posted on Gladstrong Hong Kong's internet home page. The exhibit was attached to the deposition excerpt of Wesley Li of Gladstrong Hong Kong. Gladstrong USA also objected to the affidavit of Ben Zhu, Tianjin's attorney, because it was not based on personal knowledge. In addition, Gladstrong USA objected because Metro did not attach any exhibits to affidavits. Gladstrong USA objected to exhibits H–3 through H–5 because the documents were not properly authenticated and constituted hearsay. These documents were exhibits at the depositions of Kin Chung Li. Exhibit H–3 is another hard copy of the items appearing on the Gladstrong website, showing pictures of the lighters. H–4 is a letter to the Hong–Kong Article Numbering Association, requesting product numbers for Gladstrong products. H–5 is a description and order notification letter from Gladstrong to Sico Lighters Co., Ltd.

■ A trial court does not implicitly sustain, by granting the motion, a summary judgment movant's objections where there is no ruling or order. *Jones v. Ray Ins. Agency,* 59 S.W.3d 739, 752 (Tex.App.-Corpus Christi 2001, pet. denied). For there to be an implicit ruling on a party's objection to summary-judgment evidence, some indication must appear in the record or in the summary judgment itself, other than the mere granting of the summary judgment, that the trial court ruled on the objection. *Id.* at 753 (citing Tex.R.App. P. 33.1(a)(2)(A) and holding that a trial court must either expressly or implicitly rule on objection for complaint to be preserved for review); *see also Columbia Rio Grande Reg'l Hosp. v. Stover,* 17 S.W.3d 387, 395 (Tex.App.-Corpus Christi 2000, no pet.).

■ In order to preserve any error of the trial court in ruling on its objections, Gladstrong USA was required to obtain a written order on the ruling. *See Ray Ins. Agency,* 59 S.W.3d at 753. Metro urges that appellee did not do so. The record in this case does not reveal an order on the objections. While the final judgment in this case included a "Mother Hubbard" clause, the presence or absence of a "Mother Hubbard" clause in a summary judgment is of no import to show the trial court implicitly ruled on objections. *See Well Solutions, Inc. v. Stafford,* 32 S.W.3d 313, 317 (Tex.App.-San Antonio 2000, no pet.) (stating that a Mother Hubbard clause operates on claims, not objections to summary judgment evidence). We conclude that Gladstrong USA did not preserve error for appeal. We sustain Metro's fifth issue.

### D. The Summary–Judgment Issues

### 1. Propriety of "No–Evidence" Summary Judgment

■ In its second issue, Metro argues that a "no-evidence" summary judgment was improper because Gladstrong USA retained the burden of proof to avoid the duty to indemnify. When a motion for summary judgment is based on no-evidence grounds, the Texas Supreme Court has ordered that the courts apply these rules in light of the following: the no-evidence motion can only be brought

against a claim or defense on which an *adverse* party would have the burden of proof at trial under Texas rule of civil procedure 166a(i). *Oasis Oil Corp. v. Koch Ref. Co. L.P.*, 60 S.W.3d 248, 252 (Tex.App.-Corpus Christi 2001, pet. denied); *see* TEX.R. CIV. P. 166a(i). Gladstrong USA counters that the claimant retained the burden to prove Gladstrong USA is a statutory seller which suffered a qualifying loss in a products liability action, as defined by statute, and that the defendant qualifies as a statutory manufacturer. *See Oasis Oil Corp.*, 60 S.W.3d at 255 (listing elements of statutory claim for indemnity in a product liability case). Gladstrong USA asserts the cases cited by SSP to shift the burden relate to the exception to the statutory rule—they stand for the proposition that when a manufacturer seeks to avoid liability to a seller, the manufacturer bears the burden to show that the seller is not innocent and that its independent conduct resulted in the plaintiff's injury. *See id.* at 254. Finally, Gladstrong USA argues that a seller retains at all times the burden to prove that a defendant to an indemnity claim qualifies as a manufacturer.

■ We conclude that establishing Gladstrong USA's status as the manufacturer is an element of SSP's and Metro's claim for indemnity on which they bore the burden of proof. *See id.* at 255. Therefore, Gladstrong USA properly brought no-evidence summary-judgment motions against SSP and Metro on this basis. We overrule Metro's second issue.

### 2. Statutory Indemnity

Gladstrong USA moved for and was granted summary judgment in all respects, including as to SSP and Metro's claims for statutory indemnity pursuant to section 82.002 of the civil practice and remedies code. TEX. CIV. PRAC. & REM.CODE ANN. § 82.002 (Vernon 1997). SSP and Metro each contend on appeal that there is evidence regarding the availability of statutory indemnity. This section of the law provides:

§ 82.002. Manufacturer's Duty to Indemnify

(a) A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

(b) For purposes of this section, "loss" includes court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages.

(c) Damages awarded by the trier of fact shall, on final judgment, be deemed reasonable for purposes of this section.

(d) For purposes of this section, a wholesale distributor or retail seller who completely or partially assembles a product in accordance with the manufacturer's instructions shall be considered a seller.

(e) The duty to indemnify under this section:

(1) applies without regard to the manner in which the action is concluded; and

(2) is in addition to any duty to indemnify established by law, contract, or otherwise.

(f) A seller eligible for indemnification under this section shall give reasonable notice to the manufacturer of a product claimed in a petition or complaint to be defective, unless the manufacturer has been served as a party or otherwise has actual notice of the action.

(g) A seller is entitled to recover from the manufacturer court costs and other

reasonable expenses, reasonable attorney fees, and any reasonable damages incurred by the seller to enforce the seller's right to indemnification under this section.

TEX. CIV. PRAC. & REM.CODE ANN. § 82.002 (Vernon 1997).

■ As this appeal was taken from a no-evidence summary judgment, the non-movants, SSP and Metro, had the burden to produce at least a scintilla of evidence as to every element of the claim. *Mulvey*, 147 S.W.3d at 605. Therefore, SSP and Metro had the burden to show that: (1) SSP and Metro were statutory sellers; (2) they suffered a qualifying loss; (3) the loss was suffered in a products liability action as defined by statute; and (4) Gladstrong USA qualifies as a statutory manufacturer. *Oasis Oil Corp.*, 60 S.W.3d at 255. Gladstrong USA's motions both urge "there is no evidence as a matter of law that Defendant Gladstrong was the manufacturer of the cigarette lighter, nor is there evidence that Gladstrong was a supplier of the lighter in question to [SSP]."

SSP and Metro have each argued that Gladstrong USA was a manufacturer of the lighter under section 82.001(4) of the civil practice & remedies code. TEX. CIV. PRAC. & REM.CODE ANN. § 82.001(4) (Vernon 1997). Under section 82.001(4), a "manufacturer" is defined as "any person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any component part thereof in the stream of commerce." *See id.*

■ Evidence presented by SSP and Metro [9] reflects that the lighter involved in the fire was a WAX brand lighter, purchased at a Circle K store. That evidence also reflects that the lighter exhibited the Uniform Product Code ("UPC") uniquely assigned to Gladstrong Hong Kong. In addition, evidence shows that: (1) Gladstrong USA is the sole supplier, distributor, and importer of the WAX lighter into the United States; (2) the sales manager for Gladstrong USA is Ms. Li, daughter of Gladstrong Hong Kong founder Kin Chun Li; (3) Ms. Li was involved in discussions with the U.S. Consumer Products Safety Commission ("CPSC"), after which Gladstrong USA issued a voluntary recall of the WAX lighters; (4) no companies other than Gladstrong USA and Gladstrong Hong Kong were involved in the recall; (5) the recall notice was printed on Gladstrong USA letterhead; (6) that notice included Gladstrong USA's admission that it had distributed the defective lighters and that additional letter posters would be forthcoming encouraging customers to mail the lighters in for a refund; and (7) Gladstrong Hong Kong was identified as the company to which lighters should be sent, and the company which would issue any refunds.

#### a. Single Business Enterprise and Statutory Indemnity

SSP and Metro contend that Gladstrong USA and Gladstrong Hong Kong are a single business entity, enabling the use of evidence that Gladstrong Hong Kong is the manufacturer of the lighters to establish that Gladstrong USA is the manufacturer. They urge that the two Gladstrongs must be held to be a single business entity or an injustice will result.

Summary-judgment evidence reflects that Chung Li is the president of both

---

9. As noted earlier, SSP and Metro each tendered virtually identical summary judgment evidence.

Gladstrong USA and Gladstrong Hong Kong, and controls the decisions made by both companies. Deposition testimony of Mr. Li, and of his daughter, Welsley Li, establishes the two Gladstrong entities as a family-based operation with offices in the United States and Hong Kong. The officers of both corporations are the same. Other than Mr. Li's wife and daughter, there is only one other person employed in the United States. Mr. Li further testified that Gladstrong USA was established as a means to more efficiently export/import lighters to the USA, and that such importation is Gladstrong USA's principal business. United States companies order lighters through Gladstrong USA, which forwards those orders to Gladstrong Hong Kong. Gladstrong USA was entirely capitalized by Gladstrong Hong Kong. All Gladstrong USA revenues pass directly to Gladstrong Hong Kong. Gladstrong Hong Kong funded the costs of the safety recall. With respect to that recall, Gladstrong Hong Kong hired an engineer to design the safety wheels used to ensure that the WAX lighters would be safe; Gladstrong Hong Kong also owns the patent for that safety wheel. Gladstrong Hong Kong directs use of these wheels and in fact designates how the lighters are to be built. In addition, Gladstrong Hong Kong directed the redesign of the lighter after the recall so that it would meet U.S. safety standards. Mr. Li admitted he was aware that Gladstrong Hong Kong was known as a manufacturer of lighters.

Additional evidence was offered to show that Gladstrong USA and Gladstrong Hong Kong are in fact a single business entity. Metro, on appeal, points out that: (1) both entities have similar names ("Gladstrong Investment Corporation USA" and "Gladstrong Investment, Limited" ["Gladstrong Hong Kong"] ); (2) Gladstrong USA solicits orders for Gladstrong Hong Kong and collects the latter's money; (3) Gladstrong USA attends trade shows to promote Gladstrong Hong Kong's lighters; (4) Mr. Li's daughter ran Gladstrong USA without pay for an extended period of time until it was decided she merited salary compensation; and (5) Gladstrong Hong Kong described Gladstrong USA's office as a "branch office." The allocation of profits between the two corporations was unclear.

SSP filed a Motion for Leave to File Third Party Petition against Gladstrong Hong Kong on June 27, 2002. SSP later filed a Motion to join Gladstrong Hong Kong as Necessary Party, or in the Alternative, Motion to Reconsider SSP Partners' Motion for Leave to File Third–Party Petition Against Gladstrong Investments, Ltd. Despite these actions, Gladstrong Hong Kong was never made a party to this case.[10]

Numerous cases support the single business enterprise theory in the context where both parties have been named as parties to the suit. *See S. Union Co. v. City of Edinburg*, 129 S.W.3d 74, 85–86 (Tex.2003) (RGVG, Valero Energy Corporation, Valero Transmission Company, Valero Natural Gas Company, and Reata Industrial Gas Company operated as a single business enterprise but were all named as parties to the case); *Bridgestone Corp. v. Lopez*, 131 S.W.3d 670, 676 (Tex.App.-Corpus Christi 2004, pet. granted, judgm't vacated w.r.m.) (appellees' allegations against Bridgestone included claims that Bridgestone and Firestone were operated as a single business enterprise, but both were parties in the suit); *North Am. Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 119–20 (Tex.App.-Beaumont 2001, pet. denied) (North American Van Lines, Inc.,

10. As noted earlier, no order directly on this issue is apparent in the record.

and North American Van Lines of Texas, Inc. were both named as defendants, as opposing party sought to have them considered as a single business entity); *Castle Tex. Prod. L.P. v. Long Trusts,* 134 S.W.3d 267, 272 (Tex.App.-Tyler 2003, pet. denied) (the Long Trusts sued Castle Energy, Castle Pipeline, and CEC as defendants, alleging they operated as a single business enterprise). However, even if this theory were sufficiently supported by the facts, we did not find, nor were we directed to, any authority supporting this form of liability where each of the entities alleged to constitute a single business entity was not at least, at some point, made a party to the case.[11]

### b. "Apparent Manufacturer" and Statutory Indemnity

■ SSP and Metro assert that, even if Gladstrong USA did not actually manufacture the lighter and cannot be deemed to be the manufacturer by statute, Gladstrong USA is still liable as the *apparent* manufacturer (emphasis added). Under this doctrine, one who puts out, as its own product, chattel manufactured by another is subject to the same liability as though it were the manufacturer. *See, e.g., Sears, Roebuck, and Co. v. Black,* 708 S.W.2d 925, 928 (Tex.App.-Eastland 1986, no writ) (holding Sears was not insulated from liability, where Sears instructed Whirlpool to put Sears' name on a Whirlpool washer even though it was not manufactured by Sears).

■ There are two ways an actor can put out chattel as his own product: (1) by appearing to be the manufacturer, and (2) where the chattel appears to have been made specifically for the actor. *Jackson v. Coldspring Terrace Prop. Owners Ass'n,*

939 S.W.2d 762, 765 (Tex.App.-Houston [14th Dist.] 1997, writ denied). SSP and Metro assert that, not only does Gladstrong USA appear to be the manufacturer but also, the evidence reflects that the lighters were made for, and at the direction of, Gladstrong USA. Importantly, summary judgment evidence includes Mr. Li's admission that he holds Gladstrong USA out to be the manufacturer so that customers will believe the price is lower. More than a scintilla of evidence exists to suggest that Gladstrong USA "appeared" to be the manufacturer.

Case law prior to the adoption of chapter 82 of the Texas Civil Practice and Remedies Code addresses numerous circumstances where household-name suppliers placed their commonly-known name on products they did not manufacture, and were found to be apparent manufacturers. *See Ford Motor Co. v. Mathis,* 322 F.2d 267, 273 (5th Cir.1963) (where the household name "Ford" was present on the truck in question); *Sears, Roebuck & Co.,* 708 S.W.2d at 928 (where household name "Sears" appeared on washing machine); *Maint. & Equip. Contractors v. John Deere Co.,* 554 S.W.2d 28, 31–32 (Tex.Civ. App.-Houston [14th Dist.] 1977, writ dism'd w.o.j.) (where the household name "John Deere" was displayed on a tractor that was bought from a John Deere retailer).

Case law reflects that such liability will not attach where the product is not marketed under the name of the supplier, *if* the supplier also has no connection with the final defective product or its manufacturer. *See Stanford v. Dairy Queen Prods. of Tex.,* 623 S.W.2d 797, 805–06

---

11. We would further note that neither SSP nor Metro raised claims of alter ego in their pleadings.

(Tex.Civ.App.-Austin 1981, writ ref'd n.r.e.). In *Stanford,* the court noted:

> The record establishes as a matter of law that a restaurant employee in Burnet, Texas 'Dairy Queen' was the literal 'manufacturer' of the sandwich in the sense of actually assembling the various ingredients of the sandwich, processing them and preparing the sandwich from its various ingredients. Moreover, [Dairy Queen] was not the actual vendor of the sandwich....

*Id.; see also Better Beverages, Inc. v. Meschwitz,* 643 S.W.2d 502, 504 (Tex.App.-Houston [14th Dist.] 1982, no writ) (where, despite the fact that the Dr. Pepper trademark was carried on the bottle's label, Dr. Pepper was not involved in the processing, bottling or capping of the bottle that caused the injuries, and although Dr. Pepper furnished the manufacturer with the syrup that was used, there was no allegation that the syrup caused the bottle top to fly off. Dr. Pepper therefore had not participated in the manufacturing process). In these cases, it was established that the supplier had no connection to the final manufactured product; they are therefore distinguishable from the matter before this Court.

Here, although Gladstrong USA did not place its own name on the product itself, more than a scintilla of evidence suggests it was nevertheless closely involved in the importation, marketing and distribution of the lighter and that it participated significantly in the issues related to the recall and subsequent redesign of the product. Furthermore, Mr. Li's testimony indicates that he, either individually or in his capacity as an officer and director of Gladstrong Hong Kong, deliberately holds Gladstrong USA out to be the manufacturer so that customers will believe the price is lower.

 Under Texas law, strict liability is triggered where evidence establishes that the defendant placed the product into the stream of commerce, and the defective product was a producing cause of the plaintiff's damages. *Rourke v. Garza,* 530 S.W.2d 794, 798 (Tex.1975). *Rourke* extended this doctrine to include persons engaged in the business of leasing products to third parties. *Id.* at 800. The extension is based on the principle that "[w]here one is engaged in the business of introducing products into the channels of commerce, he will be subject to strict liability for physical harm caused by such products if they are unreasonably dangerous to the user or consumer whether he sells or leases his products." *Id.; see also Willowbrook Foods, Inc. v. Grinnell Corp.,* 147 S.W.3d 492, 496 (Tex.App.-San Antonio 2004, pet. filed) (citing *Armstrong Rubber Co. v. Urquidez,* 570 S.W.2d 374, 375–76 (Tex.1978)).

The principle expressed in *Rourke* is applicable here. More than a scintilla of evidence reflects that Gladstrong USA was significantly involved in the marketing and distribution of the defective product, that it placed this product into the stream of commerce in the United States, and that it benefitted from that placement. This evidence also serves to underscore the close interaction between Gladstrong USA and Gladstrong Hong Kong and Gladstrong USA's role as apparent manufacturer of the lighter. More than a scintilla of evidence exists, sufficient to defeat a no-evidence motion for summary judgment, that Gladstrong USA was the apparent manufacturer of the lighter as that doctrine is understood and applied.

As recently as 1990, the supreme court visited this issue, albeit in a slightly different context:

> I note that a non-manufacturer may, under certain circumstances, be liable in the same manner as a manufacturer or seller of a defective product. *See* RE-

STATEMENT (SECOND) OF TORTS § 400 (1965) (Selling as Own Product Chattel Made by Another). For example, a trademark licensor may be liable as an apparent manufacturer when the licensor is significantly involved in the manufacturing, marketing, or distribution of the defective product. *See Torres v. Goodyear Tire & Rubber Co.*, 163 Ariz. 88, 786 P.2d 939, 945 (Ariz.1990) (trademark licensor that significantly participates in the overall process by which the product reaches consumers, and who has the right to control the incidents of manufacture or distribution is liable under section 402A of the Restatement); *Burkert v. Petrol Plus*, 216 Conn. 65, 579 A.2d 26, 35 (Conn.1990) (trademark licensor, absent any involvement in the production, marketing, or distribution of defective product, is not liable in strict tort liability or negligence); *Connelly v. Uniroyal, Inc.*, 75 Ill.2d 393, 389 N.E.2d 155, 163, 27 Ill. Dec. 343 (Ill.1979) (trademark licensor liable in strict liability as integral part of the marketing enterprise and participation in the profits reaped by placing a defective product in the stream of commerce); *Stanford v. Dairy Queen Prods.*, 623 S.W.2d 797, 805 (Tex.App.-Austin 1981, writ ref'd n.r.e.) (trademark licensor that only authorized use of trade name was not an "actual vendor" of the defective product under section 400 of the Restatement); *see also* Rockwell, Annotation, *Trademark Licensor's Liability for Injury or Death Allegedly Due to Defect in Licensed Product*, 90 A.L.R.4th 981 (1990); Keeton et al., PROSSER & KEETON ON THE LAW OF TORTS § 100 (5th ed.1984) (strict liability may extend to licensor who participates in the construction and sale of products made pursuant to a patent). But a mere designer of a defective product is not liable in strict liability because the apparent manufacturer doctrine does not apply when the party is not involved in the manufacture, sale, or installation of the product. *Affiliated FM Ins. Co. v. Trane Co.*, 831 F.2d 153, 155–56 (7th Cir.1987).

*Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 617–18 (Tex.1996) (Enoch, J., dissenting) (concurring with the majority on this issue but expanding the analysis of apparent manufacturer).[12] The principles addressed by Justice Enoch in his dissent (though based on different grounds) nevertheless apply well here, particularly as they address the continuing doctrine of "apparent manufacturer" and in light of Texas' clear adoption of the Restatement of Torts (Second) sections 400[13] and 402A.[14]

Although we find that the doctrine of apparent manufacturer survives, it does not appear to be applicable under the specific statutory definition of "manufacturer" provided in section 82.001(4) of the civil practice and remedies code.

---

**12.** *Firestone* clearly addressed and was decided on different issues, principally whether or not a manufacturer who developed a design idea that was copied and then modified by another manufacturer should be directly and strictly liable. Firestone did not design, manufacture, or sell the particular wheel in question. *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608 (Tex.1996).

**13.** *Nelson v. International Paint Co.*, 734 F.2d 1084, 1088 (5th Cir.1984) (citing *S. Blickman, Inc. v. Chilton*, 114 S.W.2d 646, 649 (Tex.Civ. App.-Austin 1938, no writ)).

**14.** "This Court has adopted the products liability standard set forth in section 401A of the RESTATEMENT (SECOND) OF TORTS." *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334–35 (Tex.1998), *cert. denied*, 526 U.S. 1040, 119 S.Ct. 1336 (1999).

### 3. Common Law Indemnity

 We next examine whether the doctrine of "apparent manufacturer" remains available in conjunction with common law indemnity. Metro insists that Gladstrong USA did not urge summary judgment on common law indemnity grounds. To the contrary, Gladstrong USA's no-evidence motion for summary judgment as to Metro's claim for indemnity states:

> Even if under Texas common law Gladstrong [USA] would owe a duty to indemnify Metro because of Gladstrong's role as a supplier, there has been no evidence whatsoever showing that Gladstrong was the supplier in the marketing chain of the defective product in question.

We may therefore turn to SSP and Metro's complaint that the trial court erred in granting summary judgment as to their common law indemnity claims. We will find error if common law indemnity applies in the context of this case, because we have already determined that there is more than a scintilla of evidence that Gladstrong USA was the apparent manufacturer.

 In a products liability action, a defendant will be held liable based upon proof that it placed the product into the stream of commerce and upon further proof that the defective product was a producing cause of the claimant's damages. *Firestone*, 927 S.W.2d at 613. Strict liability claims may be asserted against "innocent sellers who have no culpable responsibility except for their role as an intermediary seller that merely received a defective product and unknowingly sold it down the stream of commerce." *Oasis Oil Corp.*, 60 S.W.3d at 253. Ac-

cordingly, "to balance the right of consumers to sue any party who placed a product into the stream of commerce against the potential unfairness of subjecting significant financial liability upon an 'innocent seller,' the Texas Legislature created a statutory right to indemnification." *Id.*

Even before the adoption of chapter 82, the availability of common-law indemnity was extremely limited.[15] However, two exceptions have survived adoption of the statute, one in the context of products liability actions to protect an innocent retailer in the chain of distribution. *Fed. Petroleum Co. v. Gas Equip. Co.*, 105 S.W.3d 281, 285 (Tex.App.-Corpus Christi 2003, no pet.) (common-law indemnity survives in claims by innocent retailers against manufacturers).

In *Federal*, this Court declined to extend that indemnity as between a retailer and a supplier who did not also produce a defectively designed or manufactured product. *Id.* at 286. However, in *Federal*, there was no suggestion that the upstream supplier was the "apparent manufacturer" and therefore a "producer" of the product. There was no suggestion that the supplier had been "held out" to be the manufacturer in order to entice additional purchases.

 Further, section 82.002(e) of the civil practice & remedies code specifically provides that the statutory duty of a manufacturer to indemnify an innocent seller "is in addition to any duty to indemnify established by law, contract, or otherwise." TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(e). As noted by Justice Enoch in *Firestone*, 927 S.W.2d at 617–18, the law is directed to protecting innocent sellers from liability where a manufacturer or supplier has been significantly involved in the manufacturing, marketing, or distribu-

---

15. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 432 (Tex.1984); *Bonniwell v.* *Beech Aircraft Corp.*, 663 S.W.2d 816, 819 (Tex.1984).

tion of the defective product. We believe such is the case here, and that to find otherwise would be to abrogate the clear intent of both the common law and the statutory scheme. We therefore conclude that the common law duty to indemnify remains viable and is applicable in the context of this case.

We have determined that the doctrine of apparent authority survives, as does common law indemnity in limited circumstances. Evidence tendered by SSP and Metro demonstrates that Gladstrong USA, although perhaps not the "manufacturer" as defined under the statute, is so closely allied with the manufacturer as to be virtually indistinguishable from it, and that the company has been deliberately "held out" as the manufacturer of the product in order to entice additional consumer sales. Evidence further exists to suggest that Gladstrong USA was involved in the importation and marketing of the lighter. We therefore conclude that SSP and Metro have satisfied their burden of proof to tender more than a scintilla of evidence as to the challenged element of their indemnity claims, namely, that Gladstrong USA is the manufacturer of the lighter. We conclude that the evidence is more than a scintilla and sufficient to defeat a no-evidence motion for summary judgment. Our conclusion is limited to the facts of this case.

### III. Conclusion

We sustain SSP's second issue on appeal. We sustain Metro's fourth issue on appeal. We reverse the trial court on these issues and remand for further proceedings. Because of our disposition, we need not address SSP's and Metro's remaining issues.[16] TEX.R.APP. P. 47.1.

### OPINION ON MOTION FOR REHEARING

Appellants SSP Partners ("SSP") and Metro Novelties, Inc. ("Metro") and Appellee Gladstrong Investments (USA) Corp. ("Gladstrong") have all filed motions for rehearing.

Appellee Gladstrong asserts that the common law doctrine of "apparent manufacturer" is inconsistent with the statutory scheme of indemnity between manufacturers and sellers and did not survive enactment of the statute. Gladstrong therefore requests that we reconsider our previous ruling and affirm the trial court's no-evidence summary judgment for Gladstrong.

Appellant Metro asserts that the single business enterprise theory does not require joinder of all its members and that the failure to join Gladstrong Hong Kong is not a proper basis on which to reject that theory. Metro further urges that Gladstrong qualifies in its own right as a statutory manufacturer, relying on the Federal Consumer Products Safety Act and enabling regulations rather than the Texas statutory language presented in section 82.001(4) of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. § 82.001(4) (Vernon 2005). Metro further argues that the claim for common law indemnity should be remanded on all grounds, including status as an "upstream supplier," rather than solely on the basis of "apparent manufacturer." Metro has also moved this Court to supplement the record.

---

16. Because our opinion is limited to a determination that Gladstrong USA is not entitled to summary judgment we make no determination regarding whether Gladstrong USA will be ordered to indemnify SSP and/or Metro. Any discussion of the guardian ad litem fee issue would be purely advisory. *See Camarena v. Tex. Employment Comm'n,* 754 S.W.2d 149, 151 (Tex.1988) ("It is fundamental that a court has no jurisdiction to render an advisory opinion on a controversy that is not yet ripe.").

Appellant SSP similarly argues that (1) it was not necessary to make Gladstrong Hong Kong a party to the underlying suit in order for the claim of single business enterprise to be viable, and (2) Gladstrong qualifies in its own right as a statutory manufacturer. SSP also argues that we erroneously failed to reach the issue of guardian ad litem fees and urges that the motion for rehearing be granted because all dispositive issues were not addressed.

 Metro and SSP seek to employ the single business enterprise doctrine to have Gladstrong USA stand in the shoes of Gladstrong Hong Kong and be vicariously liable for Gladstrong Hong Kong's potential direct liability, particularly on their indemnity claim. We have reviewed the cases cited for the proposition that joinder of Gladstrong Hong Kong was not required as a prerequisite to presenting a viable claim under the single business enterprise theory. We nevertheless find those cases to be distinguishable.

 Texas recognizes the "single business enterprise doctrine" to prevent an entity from relying upon corporate form to evade an *existing* debt or legal obligation. *See Paramount Petroleum Corp. v. Taylor Rental Ctr.*, 712 S.W.2d 534, 536 (Tex. App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.) (sufficient evidence to support the single business enterprise theory, as well as the theory of partnership by estoppel, to permit recovery on outstanding invoices); *Byrne v. Harris Adacom Network Servs.*, 11 S.W.3d 244, 247–48 (Tex.App.-Texarkana 1999, pet. denied) (discussing that allegations included single business enterprise as well as piercing of corporate veil in order to collect on outstanding promissory notes).[1]

In *Wildridge v. IER, Inc.*, 65 F.Supp.2d 429, 431 (N.D.Tex.1999), the court denied joinder of a foreign entity but did permit the plaintiff to rely on the single business enterprise theory for the purpose of establishing a sufficient number of employees to trigger application of Title VII for her employment discrimination claim. However, recovery was sought against the named defendant that was alleged to be directly liable.[2]

*In re U–Haul Intl., Inc.*, 87 S.W.3d 653 (Tex.App.-San Antonio 2002, orig. proceeding) derived from a personal injury claim, rather than an already-existing legal obligation, but the question before the court on mandamus involved a discovery dispute and whether or not documents could be compelled from corporate affiliates and subsidiaries. *Id.* at 656. The plaintiff seeking the discovery relied upon the single business enterprise theory but failed to

---

1. *Butcher, Carter & Preston Co. v. Republic–Lagun CNC Corp.*, 01-00-00321-CV, 2001 WL 995370, 2001 Tex.App. LEXIS 6028 (Tex. App.-Houston [1st Dist.] 2001) (unpublished), also cited by appellants, involved efforts to collect on a sworn account.

2. SSP also cites to *Luedtke v. BHP Petroleum (Americas) Inc.*, 07-97-0442-CV, 1999 WL 343427, 1999 Tex.App. LEXIS 2716 (Tex. App.-Amarillo 1999) (unpublished), which involved a complex network of foreign and domestic companies and subsidiaries, a merger and corporate restructuring. Luedtke, suing under an employment contract, asserted that BHP was liable either as his direct employer, or liable as the alter ego of or a participant in a single business enterprise with the entity that was his employer. *Id.* at *1–*2. The court found summary judgment inappropriate because there remained a fact issue as to whether BHP was his direct employer. *Id.* at *14. *El Puerto de Liverpool, S.A. de C.V., v. Servi Mundo Llantero, S.A. de C.V.*, 82 S.W.3d 622 (Tex.App.-Corpus Christi 2002, pet. dism'd w.o.j.), cited by Metro and SSP, focused on the alter ego theory. *Id.* at *2. *Murphy Bros. Chevrolet Co. v. East Oakland Auto Auction*, 437 S.W.2d 272, 275–76 (Tex. Civ.App.-El Paso 1969, writ ref'd n.r.e.) similarly deals with the theory of alter ego. *See id.*

meet its burden to establish possession, custody or control. *Id.* at 657. *In re Western Star Trucks US, Inc.,* 112 S.W.3d 756 (Tex.App.-Eastland 2003, orig. proceeding), another mandamus action, similarly involved an effort to obtain discovery, but this time from a named defendant. *Id.* at 760. In issue was whether corporate form was being relied upon to avoid existing corporate debts and liabilities, joint and several liability, and whether net worth of a named defendant was discoverable based upon the single business enterprise theory. *Id.* at 760–61. Mandamus was granted to rescind the trial court order deeming a finding of joint and several liability, and to address issues relating to a deposition; net worth was discoverable. *Id.* at 764, 766.

The cases cited by Metro and SSP are therefore distinguishable on a variety of grounds. Even if the single business enterprise doctrine does not require that Gladstrong Hong Kong be a party to the suit, we decline to further extend the doctrine as currently understood, by analogy or otherwise, to the circumstances of this case where Metro and SSP seek to hold a named defendant vicariously liable for the potentially wrongful acts or conduct of a non-party.

■ We further note the issue of guardian ad litem fees. Because determination of which party or entity is ultimately liable for those fees may be altered upon remand, we decline to find that this issue is ripe for consideration.

We deny Gladstrong's motion for rehearing. We reconsider our denial of the motion to supplement the clerk's record, withdraw the denial, and grant the motion to supplement the record. We deny Metro's motion for rehearing. We deny SSP's motion for rehearing.