In The



Court of Appeals


 

Ninth District of Texas at Beaumont


____________________



NO. 09-05-170 CV


____________________



CARLSON MANUFACTURING, INC., Appellant



V.



CHARLES SHANE SMITH, Appellee






On Appeal from the 260th District Court


Orange County, Texas


Trial Cause No. D-030337-C






OPINION


 This is an interlocutory appeal from the denial of a special appearance. See Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (Vernon Supp. 2005). Allegedly injured
in a fall when the seat broke on his tree-mounted deer stand, Charles Shane Smith filed a
products liability action against a number of defendants alleged to have placed the deer
stand into the stream of commerce. Buckfinder Hunting Products, Inc. ("Buckfinder")
submitted to the jurisdiction of the trial court, but Carlson Manufacturing, Inc. ("Carlson")
filed a special appearance. (1) See Tex. R. Civ. P. 120a. Smith contended Carlson is subject
to personal jurisdiction in Texas courts because Buckfinder conducted business in Texas
and the two corporations maintain a single business enterprise. Smith also argued to the
trial court that Buckfinder is an alter ego of Carlson. On appeal, we must resolve whether
the trial court erred: (1) in imputing another corporation's contacts to the appellant; and
(2) by denying a special appearance filed by a corporation that conducts no business in
Texas and did not manufacture, market, or sell the product at issue in the litigation. We
find the evidence does not support the imputation of Buckfinder's activities in the forum
state to Carlson; therefore, we reverse the trial court's order and render judgment
dismissing the claims against the appellant.

 A Texas court may exercise personal jurisdiction over a nonresident defendant to
the extent authorized by state and federal due process standards and the long-arm statute.
Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223,
226 (Tex. 1991). Our long-arm statute allows Texas courts to exercise jurisdiction over
foreign defendants who are "doing business" within the state. See Tex. Civ. Prac. &
Rem. Code Ann. § 17.042 (Vernon 1997). Due process requires that the nonresident
defendant have purposefully established minimum contacts with Texas, and the exercise
of personal jurisdiction over the nonresident defendant must not violate traditional notions
of fair play and substantial justice. Guardian Royal, 815 S.W.2d at 230-31. Purposely
established minimum contacts may support the exercise of specific jurisdiction (where the
defendant's liability arises from an activity conducted in Texas) or general jurisdiction
(where the nonresident maintains continuous and systematic contacts with the forum state).
BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 795-96 (Tex. 2002). 

 An analysis of specific jurisdiction focuses on the relationship between the
defendant, the forum, and the litigation, and requires a substantial connection between the
plaintiff's cause of action and the transaction the defendant purposefully consummated in
the state. Guardian Royal, 815 S.W.2d at 228, 230. The more demanding general
jurisdiction analysis "requires a showing of substantial activities in the forum state." Id.
at 228. The defendant must intentionally avail itself of the privilege of conducting
activities within the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475,
105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The defendant's activities may consist of direct
acts within Texas or conduct outside the state, but must justify a conclusion that the
defendant could reasonably anticipate being called into a Texas court. World-Wide
Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490
(1980). A defendant cannot "be haled into a Texas court for the unilateral acts of a third
party." American Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex.
2002), cert. denied, 537 U.S. 1191, 123 S.Ct. 1271, 154 L.Ed.2d 1025 (2003). 
Attenuated contacts will not justify the exercise of long-arm jurisdiction. Id. 

 Upon filing its special appearance, Carlson assumed the burden to negate all bases
of personal jurisdiction alleged by the plaintiff. See id.; Kawasaki Steel Corp. v.
Middleton, 699 S.W.2d 199, 203 (Tex. 1985). An affidavit from Carlson chief executive
officer Warren Carlson states that Carlson is a Minnesota corporation that is not registered
to do business in Texas, maintains no office in Texas, and neither commits any acts within
the state nor consummates any transactions here. Carlson operates a machine shop in
Minnesota and has never manufactured, distributed or sold tree stands used by hunters,
including the stand used by Smith. Conceding that it is possible that a Carlson employee
might on occasion machine a part that would be incorporated into products sold and
marketed by Buckfinder, Warren Carlson stated that he had personally examined the stand
involved in this case and "did not identify any part of the chair that was made, in whole
or in part," by Carlson. According to Warren Carlson, "[t]he tree stand and its associated
parts were not manufactured or sold" by the appellant, and the product "was not designed,
manufactured, marketed, assembled, distributed, sold, installed, supplied or maintained"
by Carlson. Carlson received no consideration from the purchase of the stand by Smith
or by co-defendant Precision Archery. Thus, Carlson contends, its independent contacts
with Texas do not support the exercise of either specific or general jurisdiction. 

 Smith does not contest the lack of direct contacts between Carlson and Texas, and
relies solely on Buckfinder's contacts with Texas in this transaction to establish in
personam jurisdiction over Carlson. Other than the product at issue in this case, there is
no evidence of any activity by Buckfinder that is connected to the State of Texas. Smith
contends Carlson and Buckfinder operate a single business enterprise. Before the trial
court, he also claimed Buckfinder is the alter ego of Carlson. 

 According to Warren Carlson, Carlson owns no shares of Buckfinder or Buckfinder
Industrial Development, Inc. ("Buckfinder Industrial"), two separate and distinct
corporations chartered by the State of Minnesota. Warren Carlson is the president of all
three corporations. Carlson was incorporated many years before the 1999 incorporation
of Buckfinder and Buckfinder Industrial and their resources are not integrated with one
another. Buckfinder and Buckfinder Industrial operate as separate corporations capitalized
as required by Minnessota law, and file separate tax returns from Carlson. The appellant
has separate bank accounts. Carlson maintains separate payroll employees from
Buckfinder, as well as separate accounting records and records of meetings of its
shareholders and board of directors. Subsequent to the filing of the suit, no funds have
been transferred to or paid to Carlson by Buckfinder. 

 To controvert Warren Carlson's affidavit, Smith relies on excerpts from Warren
Carlson's deposition. That deposition testimony established that Buckfinder leases office
space in Minnesota from Carlson but maintains its own employee and a separate shipping
and receiving department, that Buckfinder owes Carlson rent but has paid neither rent nor
utilities, and that Warren Carlson does not have a personal office within Buckfinder's
leased space but has an office in Carlson's building. Warren Carlson admitted Carlson
occasionally made loans to Buckfinder that were documented but were never paid off. He
also admitted that Buckfinder used Carlson's "fixturing" to manufacture a part used in
Buckfinder's deer stands. Smith argues this evidence is sufficient for the trial court to find
that the corporations operate a single business enterprise, and contends that the operation
of a single business enterprise will support the exercise of jurisdiction in this case. 

 In BMC Software, the court considered the application of the alter ego doctrine in
the context of long-arm jurisdiction. "To 'fuse' the parent company and its subsidiary for
jurisdictional purposes, the plaintiffs must prove the parent controls the internal business
operations and affairs of the subsidiary." BMC Software, 83 S.W.3d at 799. "But the
degree of control the parent exercises must be greater than that normally associated with
common ownership and directorship; the evidence must show that the two entities cease
to be separate so that the corporate fiction should be disregarded to prevent fraud or
injustice." Id. Because Texas law presumes that two separate corporations are distinct
entities, the courts will not disregard the separate legal identities of corporations unless that
relationship is used to defeat public convenience, to justify wrongs such as violation of the
anti-trust laws, to protect fraud, or to defend crime. Id. at 798. In BMC Software, the
court found no evidence to support the trial court's alter ego finding, where the
corporations not only shared officers, but also incorporated the other corporation's
financial performance in SEC filings, offered a stock option plan to the subsidiary's
employees, and had the same letterhead. Id. at 799-800. The trial court could not infer
control from testimony that the parent company from time to time had employees in the
offices of a variety of its subsidiaries. Id. at 800. 

 Buckfinder is not a subsidiary of Carlson, and there is no evidence that Carlson
controls Buckfinder's operations. Although the appellee presented some evidence that
Buckfinder has a parasitic existence upon Carlson, there is no evidence that their
arrangement is illegal or that the companies failed to observe corporate formalities. We
conclude the trial court could not apply an alter ego theory to assume jurisdiction over
Carlson based upon Buckfinder's acts in the State of Texas.

 On appeal, Smith primarily relies upon the trial court's implied finding that Carlson
and Buckfinder comprise a single business entity. Although the Supreme Court has thus
far reserved ruling on the issue, several intermediate appellate courts, this Court included,
have recognized a concept of "single business enterprise" in one context or another. 
Southern Union Co. v. City of Edinburg, 129 S.W.3d 74, 85-90 (Tex. 2003); National
Plan Adm'rs, Inc. v. National Health Ins. Co., 150 S.W.3d 718, 744 (Tex. App.--Austin
2004, pet. filed) (recognizing doctrine as a valid equitable means of piercing the corporate
veil to impose liability); Bridgestone Corp. v. Lopez, 131 S.W.3d 670, 686-87 (Tex. App.--Corpus Christi 2004, pet. granted, judgm't vacated w.r.m.) (finding exercise of
jurisdiction comported with due process where two corporations operated as a single
business enterprise); El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero, S.A.
de C.V., 82 S.W.3d 622, 636-37 (Tex. App.--Corpus Christi 2002, pet. dism'd w.o.j.)
(affirming denial of special appearance where companies shared common employees, used
a centralized accounting system, and performed services for each other); North Am. Van
Lines, Inc. v. Emmons, 50 S.W.3d 103, 119-21 (Tex. App.--Beaumont 2001, pet. denied)
(recognizing equitable doctrine may apply under exceptional circumstances.). But see SSP
Partners v. Gladstrong Invs. (USA) Corp.,169 S.W.3d 27, 44 (Tex. App.--Corpus Christi
2005, pet. filed)(declining to extend the doctrine to a party's vicarious liability for the
wrongful acts of a non-party). Factors to be considered in determining whether separate
corporations should be treated as one enterprise include: (1) common employees; (2)
common offices; (3) centralized accounting; (4) payment of wages by one corporation to
another corporation's employees; (5) common business name; (6) services rendered by the
employees of one corporation on behalf of another corporation; (7) undocumented transfers
of funds between corporations; and (8) unclear allocation of profits and losses between
corporations. Paramount Petroleum Corp. v. Taylor Rental Ctr., 712 S.W.2d 534, 536
(Tex. App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.). Buckfinder maintained its
offices in Carlson's building, but there is no evidence of common employees, centralized
accounting, payment of wages, use of a common business name, using the services of the
other corporation's employees, undocumented transfers of funds, or allocation of profit and
loss. As we have already noted, however, Buckfinder did owe rent to Carlson that it did
not pay, and Buckfinder did use Carlson's equipment to manufacture its products. 
However, the purpose of the single business enterprise theory, like the alter ego theory and
other doctrines designed to pierce the corporate veil, is to prevent an inequitable result. 
See Castleberry v. Branscum, 721 S.W.2d 270, 271 (Tex. 1986). (2) Among the reasons
recognized in the past for disregarding the corporate fiction are: (1) when it is used as a
means of perpetrating fraud; (2) where a corporation is organized and operated as a mere
tool or business conduit of another corporation; (3) where it is used to evade an existing
legal obligation; (4) where it is employed to achieve or perpetrate a monopoly; (5) where
it is used to circumvent a statute; and (6) where the corporate fiction is relied upon as a
protection of crime or to justify wrong. Id. at 272. None of these factors is present here. 
The appellee argues that Buckfinder is a mere tool or conduit of Carlson, but there is no
evidence that any of the benefits of Buckfinder conducting business in the State of Texas
- or anywhere - inured to Carlson.

 Because this case involves a special appearance where the defendant must
purposefully avail itself of the benefits of the forum state and constitutional principles of
fair play and substantial justice are at issue, our review must focus upon the defendant's
actions and expectations. While the corporations may have conducted business that would
benefit their common president, the interactions between the corporations do not provide
a basis for disregarding their separate nature. It is not reasonable for Carlson to expect
to be called into a Texas court to defend a product liability suit on one of Buckfinder's
products. (3) 

 We conclude Carlson Manufacturing, Inc. did not purposefully establish sufficient
minimum contacts with Texas to support exercising jurisdiction over it. Therefore, the
trial court erred in denying the special appearance. The appellant's issues are sustained. 
We reverse the trial court's order and render judgment dismissing the claims of Charles
Shane Smith against Carlson Manufacturing, Inc.

 REVERSED AND RENDERED.




 ____________________________

 STEVE McKEITHEN

 Chief Justice 




Submitted on September 1, 2005

Opinion Delivered November 3, 2005


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. The plaintiff's claims against Buckfinder were severed from this suit after
Buckfinder Hunting Products, Inc. and Buckfinder Industrial Development, Inc., filed for
bankruptcy protection. References in this opinion to "Carlson" are to the appellant, a
corporation, and not to Warren Carlson, a non-party witness. 
2. Castleberry has been largely superceded by subsequent statutory amendments. See
Tex. Bus. Org. Code Ann. § 21.223 (Vernon Supp. 2005) (effective January 1, 2006). 

3. Our ruling is limited to the issue of in personam jurisdiction over the appellant. 
We express no opinion on any liability issues in this case.